STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
KENNETH HALL, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 13, 1959—Decided May 11, 1959.

442

Before Judges GOLDMANN, CONFORD and FREUND.

*Mr. Carl A. Frahn* argued the cause for defendant-appellant (*Messrs. Strong & Strong,* attorneys).

*Mr. William D. Danberry,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Warren W. Wilentz,* Middlesex County Prosecutor, attorney).

The opinion of the court was delivered by

FREUND, J. A. D.   A joint trial in the Middlesex County Court resulted in the conviction of three co-defendants on two counts:   breaking and entering with intent to steal, *N. J. S.* 2*A* :94–1, and larceny of the goods and money of L. Adler & Sons, Inc., *N. J. S.* 2*A* :119–2.   Separate indictments charged each of the defendants on both counts. On a pretrial motion by the State, and over the objections of counsel for all three defendants, the indictments were consolidated for trial.   At the conclusion of the prosecutor's opening statement, in which reference was made to a verbal statement given by one of the accused admitting the participation of all three defendants, motions for severance of trial were made by counsel but denied by the trial judge.   The trial court declined to grant motions for acquittal made at the close of the State's case and renewed at the conclusion of the entire case.   The jury found each defendant guilty of a high misdemeanor in breaking and entering and of a misdemeanor in larceny of the property removed.   Defendant Kenneth V. Hall, having received consecutive sentences to the Bordentown Reformatory on each of the two counts, is the sole appellant.

Breaking and entering and larceny were committed in North Brunswick, Middlesex County, some time after 6 :30 P. M. on January 15, 1958 at the Adler corporation building, used as a combination service station, garage, and farm implement and garden equipment dispensary.   Stolen were two chain saws, four tires, an electric paint sprayer, a heavy duty drill, a number of wrenches, and between $20 and $30 in silver coin.   The State proved that Hall and the other two defendants, John A. Fitzgerald and Edward C. Smith,

Jr., were apprehended at 12:25 A. M. that night (actually the morning of January 16, 1958), 45 miles from the scene and in a truck found to contain part of the stolen property and a .32 automatic, loaded pistol in the glove compartment. The truck was stopped on Route 69, Washington Township, Warren County, by two state troopers on routine patrol. It was owned by Edward C. Smith, Sr., and operated by his son, the defendant Smith, both of Little Ferry, Bergen County. Fitzgerald, also of Little Ferry, occupied the middle seat in the cab of the truck, and Hall, of Newark, was on Fitzgerald's right. Two of the four tires found in the rear of the truck were in "Adler" wrappings, and the two chain saws were new. Hall had about $20 in silver in his pockets; he first told one of the officers he had the coins because he worked in a gas station, but then said, "I took it out of my piggy bank." The paint sprayer, drill, and wrenches were not in the truck and have never been located.

Smith had brought the truck to a stop as soon as practicable after observing a signal from the police car. And after the arresting officers had inspected the truck, the youths re-entered it and, without attempting to escape, followed the patrol car three miles to the police barracks in Washington Township.

In the two to three early-morning hours they remained at the barracks, each was questioned individually. Fitzgerald "denied everything." Hall gave the police a signed statement, received in evidence over objection, that he happened to have been at a gasoline station in Hackensack on the night of January 15 and had been invited by the defendant Smith, whom he knew only slightly, to go for a ride. It recites that Smith "said he had some junk in the car and was supposed to give it to someone down there" near Annandale. "He did not tell me anything. He just asked me if I wanted to go for a ride." Hall denied ever having seen the gun before and said he had fallen asleep "a couple of times" and therefore was unable to say which route they had taken in the alleged journey from Hackensack.

Smith gave an unsigned statement, also read into evidence over objection. According to him, "Hall came into the truck with a bag in his hand," and when the troopers stopped the truck, Hall said, " 'I have got my gun with me.' " Smith denied his involvement with the crime, explaining that he was transporting the merchandise to Annandale for $25 as he had agreed with an undisclosed man who, unable to rent a truck for himself that night, had approached him at the Hackensack gas station. This person had told him to deliver "this stuff" to a red truck which he was to meet at a diner near Annandale. The police made an unsuccessful three-hour search for the red truck in the rendezvous area. There was testimony that the diner closed at 9:00 P. M. in the winter time.

At about 4 o'clock that morning, the defendants were taken to the Warren County jail in Belvidere. The warden testified that when Hall came into the prison, he had a "wrapped up hand. He had some stitches in. I took him to the doctor * * *. He told me he got it in Hackensack down in the garage." Entrance to the Adler building had been effected by breaking a glass window.

Some time after noon on January 16 Fitzgerald was questioned further, first by Trooper Charles A. Place alone and then by Place and Trooper-Investigator Alvin Hammond in the presence of the warden. The officers and warden all testified, over objection, that Fitzgerald admitted to them at this time that he, Hall, and Smith had broken into the Adler service station. After conferring with Hall, however, Fitzgerald refused to sign a statement to this effect. When Fitzgerald repeated his admission of their guilt in Hall's presence, Hall denied it emphatically.

Detective Joseph Skelly of the State Police also testified that he had a conversation with Hall on the morning of January 16. ' When Skelly asked Hall who did he expect would believe the story about his being with Smith just for the ride, Hall replied:

"Well, there's twelve people on the jury. There's twelve minds, and one of the jerks might believe me."

Neither Hall nor Smith testified at the trial. The only witness for the defense was Fitzgerald who proceeded to deny their guilt. He claimed that his verbal confession at the county jail had been extracted by violence and threats. The voluntary nature of the confession was the subject of rebuttal testimony offered by the State.

Hall appeals from his resultant conviction on two principal grounds: all of the evidence against him was circumstantial and not of sufficient weight to justify submission of the case to the jury as against his motions for acquittal; and the oral statements given the police by Fitzgerald and Smith implicating him in the crimes, received in evidence, were inadmissible hearsay as to him, and the trial judge, having already denied the motions for severance, was bound to, but did not give instructions adequate to prevent the jury's considering the statements as bearing upon his guilt.

As to the first point, Hall contends that, apart from the highly inculpatory statements of Smith and Fitzgerald, the only competent evidence the State had proved against him is that he was in the company of the other two defendants on a truck ride which, so far as he was concerned, involved nothing more than a trip for the purpose of Smith's delivering the contents to some one near Annandale. The argument is that he was not in possession of the articles found in the truck, that the State did not place the defendants any closer to the scene of the crime than 45 miles, and that there was no identification of the money found on his person with the coins taken from the Adler building.

The test for passing upon motions for acquittal, even where the evidence is wholly circumstantial, has recently been stated to be "whether the evidence, viewed in its entirety and giving the State the benefit of all legitimate inferences therefrom, was such that the jury could properly find beyond a reasonable doubt that the defendant had

stolen" the goods in question. *State v. Dancyger*, 29 *N. J.* 76, 84 (1959).

■ The circumstantial evidence against Hall was sufficient to permit the jury to find beyond a reasonable doubt that he was guilty of the crimes charged in the indictment. The State established that within six hours (at the longest) after the commission of the crime, Hall was riding in a truck containing some of the stolen goods. Six hours is a liberal calculation, for the offense may well have been committed later than 6:30 P. M. when the Adler premises had been closed. There was a loaded gun in the truck. Hall had about $20 in silver in his pockets, the approximate amount stolen. He gave a contradictory and finally unreasonable account of his possession of the money. While possession of the coins would have been more inculpatory if they had been identified as the specific coins missing from Adler's, the evidence was sufficient, in the light of the unlikely explanation of the defendant, to permit the jury to find they were part of the stolen goods. As to recent possession of stolen goods as evidence of theft, see *State v. Dancyger*, *supra*. Lastly, there is the circumstance of Hall's cut and bandaged hand, as to the cause of which the evidence was to some degree equivocal. The warden testified Hall told him he sustained the injury "in Hackensack down in the garage." Fitzgerald testified, however, that Hall explained the cut as the result of having "slipped in the ice and pushed his hand through a window." Another permissible inference which could have been drawn prior to the close of the State's case—but one which does not explain the stitches—was that the hand had been cut in the course of breaking the Adler window.

All of the foregoing facts present a circumstantial case sufficient to permit the jury to draw an inference of guilt within the rule stated by *State v. Dancyger, supra.*

The second ground of appeal is that the jury was not adequately informed of their function in considering the probative force of the extra-judicial statements of each of

the several defendants. As there was no charge of conspiracy or agency relationship, none of the out-of-court statements made by Smith and Fitzgerald were admissible for any purpose in the State's case against Hall. *State v. Carbone*, 10 *N. J.* 329, 340 (1952); *McCormick, Evidence* (1954), § 247, *p.* 529. Hall's position is that the trial judge's limiting instructions, which cautioned only that the statements of co-defendants were not "binding" on the other defendants, were reversibly insufficient and prejudicial, and that it was mandatory for the trial judge to charge on each occasion as well as in his final charge that the statements by the co-defendants were not to be considered as evidence and were to be completely disregarded in connection with the determination of the guilt or innocence of the defendant Hall. The emphasis of the appellant's argument is on the court's omissions, from which it is reasoned that prejudice automatically resulted. But see *State v. Yedwab*, 43 *N. J. Super.* 367, 373–75 (*App. Div.*), certification denied 23 *N. J.* 550 (1957).

We deal first with the court's action in denying the motions for severance prior to and at the outset of the trial. The established rule in this jurisdiction is that the granting of the State's motion for consolidation or the defendant's motion for severance lies within the discretion of the trial judge, and a claim of prejudice grounded upon the prospect that some evidence will be admissible only as to one defendant does not require a severance as a matter of right. *State v. Rios*, 17 *N. J.* 572, 583–585 (1955); *State v. Manney*, 26 *N. J.* 362, 369–370 (1958); *State v. Rosenberg*, 37 *N. J. Super.* 197, 203 (*App. Div.* 1955), certification denied 20 *N. J.* 303 (1956); *R. R.* 3:4–8; *R. R.* 3:5–6; *R. R.* 3:5–7. See also 23 *C. J. S. Criminal Law* § 935(*b*)(2), *p.* 227. This view also prevails in most other jurisdictions. See *Annotation, "Right to severance where codefendant has incriminated himself,"* 54 *A. L. R.* 2d 830, 833 (1957). The ultimate inquiry for the trial judge in passing upon such motions is whether a jury is likely to be unable to

comply with the court's limiting · instructions. *State v. Manney, supra,* 26 N. J. at *page* 368. Defendant does not on appeal contend that the county judge abused the discretion thus initially reposed in him.

■ Respectable authority also indicates that Fitzgerald's out-of-court confession and Smith's inculpatory reference to Hall's having placed the gun in the glove compartment could be admitted in a joint trial solely against the respective declarants, under appropriate instructions that they were hearsay as to, and not to be considered against, the defendant Hall. *Delli Paoli v. United States,* 352 *U. S.* 232, 77 *S. Ct.* 294, 1 *L. Ed. 2d* 278 (1957); *State v. Stanford,* 90 *N. J. L.* 724 (*E. & A.* 1917); *State v. Unger,* 93 *N. J. L.* 50, 53 (*Sup. Ct.* 1919), reversed on other grounds 94 *N. J. L.* 495 (*E. & A.* 1920); *State v. Newman,* 95 *N. J. L.* 280, 281 (*Sup. Ct.* 1921); 4 *Wigmore, Evidence* (*3d ed.* 1940), § 1076, *pp.* 116–17, and § 1079(1)(*d*), *p.* 134. Whether members of a jury are capable of properly disciplining their minds so as to perform the psychological feat required of them was the basis of disagreement in *Delli Paoli v. United States, supra.* Mr. Justice Frankfurter, speaking for a minority of four, recognized the view of Judge Learned Hand that admitting the confession " 'probably furthers, rather than impedes, the search for truth, and this perhaps excuses the device,' " but went on to say:

"But where the conspirator's statement is so damning to another against whom it is inadmissible, as is true in this case, the difficulty of introducing it against the declarant without inevitable harm to a co-conspirator, * * * is no justification for causing such harm. The Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." 77 *S. Ct.* at *page* 303.

For the majority, Mr. Justice Burton wrote:

"Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to

follow them, the jury system makes little sense. \* \* \* As a practical matter, the choice here was between separate trials and a joint trial in which the confession would be admitted under appropriate instructions. Such a choice turns on the circumstances of the particular case and lies largely within the discretion of the trial judge." 77 *S. Ct.* at *page* 300.

██ Where a significant portion of the evidence to be adduced at a trial is admissible only as to one defendant, the probability of harm to the other may be so great that the trial judge should, as a matter of fair practice, exercise his discretion in favor of a severance. If, however, the potential for prejudice was not measurable at the pretrial hearing but becomes evident during the trial, the trial judge is again required to exercise his discretion when the subject evidence is offered by the State. Should he at that point determine that his protective instructions will be plainly ineffective, the better course will require him to grant the severance initially denied. If in his discretion it is determined that the prejudice may be overcome by his apprising the jury of the limited scope of the proffered evidence, the rule in this State, not presently challenged by the appellant, is in favor of resolving the dilemma posed in *Delli Paoli v. United States, supra,* by admitting the evidence under appropriate instructions that it is proof only against the declarant. See, *e. g., State v. Stanford, supra.* And such we think is implicit in the more recent *State v. Manney* decision, *supra.*

██ Against this background of the significance of and necessity for adequate and timely protective instructions, our task is to study the transcript of the proceedings in the County Court and to determine as best we can whether it can justifiably be said that the jury was not properly informed of the limited use of the extra-judicial statements of the co-defendants and, if so, whether there should be a reversal for that reason.

The first significant occasion arose during the prosecutor's opening statement. After saying that one of the defendants verbally confessed, the prosecutor said: "That would only

be against him, that statement." Out of the jury's presence, motions for severance of trial were made and denied. Defense counsel requested no other limiting instruction by the court.

The next time the question presented itself was during the testimony of the first witness, one of the apprehending officers. After the officer related Smith's story that it was Hall who had placed the gun in the glove compartment, Hall's attorney objected on grounds of admissibility. The prosecutor, recognizing the need for limiting instructions, said:

"* * * I think that there is something to the statements made by counsel, but I think your Honor might charge the jury that any statements made by any of these defendants is [sic] only admissible as to them and not as to the other defendants."

The trial judge replied:

"I think the jury can differentiate and understand that any statement made by defendant is not against the others. I think they can distinguish that as it develops."

Neither the prosecutor's nor the court's statement was addressed to the jury. The latter says only that a statement made by one defendant is not "against the others." It falls far short of that quoted in *State v. Rosenberg, supra,* to the effect that the out-of-court declaration is to be disregarded and not used as proof against the co-defendant.

Shortly thereafter the prosecutor introduced, through the same witness, Hall's signed statement by saying:

"I am not offering this in the case of the State versus Smith. It is only in the case of State versus Hall."

Again defense counsel's objection to *admissibility* was overruled, and there was no request for limiting instructions.

The same witness was thereafter asked to read Smith's unsigned statement into evidence. The prosecutor offered the statement "in relation to the case of the State of New

Jersey versus Edward C. Smith." Objections to admissibility were overruled.

The third witness was the trooper to whom Fitzgerald had orally confessed the guilt of all three defendants while at the county jail. When the officer so testified, Hall's counsel objected on hearsay grounds among others. Smith's attorney joined in the objection, adding

"I think if the court will not strike that testimony, then the court should fairly instruct the jury at this point that this testimony is not testimony that can be held against defendant Hall or against defendant Smith.

Mr. Wilentz: Of course, I think your Honor has instructed the jury that these statements are only as to the one case.

The Court: Yes. I want you jurors to bear that in mind. I think I mentioned that to you previously. Of course, I will very definitely instruct you further in the matter too. Proceed."

We of course do not regard this colloquy, standing alone, as an effective protection to the defendant Hall. In place of an informative instruction detailing the reasons for the confession's inapplicability to the co-defendants was substituted a mere direction that the jurors use whatever advice they had been given or were to receive.

On five other occasions throughout the trial, objections were made to the introduction of evidence admissible against one defendant but not against the others. There was never a request for a more precise or accurate limiting instruction than had been given previously. On another occasion a question, addressed to another of the officers to whom Fitzgerald had confessed, indicated to the jury that the confession "could not be heard by this jury as being evidence against Smith * * *." Upon the conclusion of the State's case, Fitzgerald's counsel told the trial judge that he had "tried a very fair case" up to that point.

In his charge to the jury, the trial judge said that Hall's signed statement "would affect only the defendant Hall." Turning to Smith's unsigned statement, he advised that it

"\* \* \* is not binding on the other defendants in the case. I want to make that clear, because statements are only binding on the one who made it and not the others who may be mentioned. So you will bear this in mind when you read the statements in the jury room."

Later in the charge the judge reminded the jurors that when one defendant tells a witness, out of the presence of the others, that the others have participated with him in the commission of the crime, that statement "is not binding on the other co-defendants \* \* \*."

Immediately prior to the jury's retirement, counsel for Hall, in a side bar conference with the judge, requested the court to charge that Fitzgerald's confession in Hall's presence, vigorously denied by Hall, "also is not binding on Hall." The judge declined to do so on the basis that it had been covered in the charge as given.

██ It must be admitted that the mere admonition to the effect that the statements of the co-defendants were "not binding" on Hall was not in and of itself adequately protective of his rights. The word "binding" might well be understood by jurors as indicating only that the particular evidence is not to be conclusive against the defendant of the existence of facts thereby made known to them. While the phrase has been said to exhibit due regard for the party as to whom certain evidence is inadmissible, *State v. Cioffe*, 128 *N. J. L.* 342, 351 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 160 (*E. & A.* 1943), it does not in our opinion satisfy the need for a clear charge that the entire statements are to be completely disregarded and not considered in any way as proof in the case against the co-party.

Nevertheless, as stated, none of the defendants' attorneys objected to the contents of the court's limiting instructions, nor did they offer any appropriate suggestions—omissions found significant in *State v. Rios, supra,* 17 *N. J.* at *page* 586. *R. R.* 3:7–7(*b*); 1:5–1(*a*). Counsel for Hall himself used the word "binding" when requesting clarification for the jury of the limited scope of Fitzgerald's confession.

While the complete failure to give limiting instructions might constitute "plain error," we cannot say that the appellant suffered injury of that degree by the court's somewhat ungenerous exposition of the law. When all the circumstances are considered, including the careful remarks of the prosecutor in introducing each exhibit, and the numerous objections to each such offer of proof and the trial judge's rulings thereon as expressed in his limited pronouncements, we are confident that the jury did not so far misconceive the probative force of the extra-judicial statements as to warrant reversal on the basis of "plain error."

Affirmed.