STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JERRY H. FUCHS, DEFENDANT-APPELLANT.

Argued June 5, 1972—Decided June 19, 1972.

*Mr. Robert I. Ansell* argued the cause for appellant (*Messrs. Anschelewitz, Barr, Ansell and Bonello*, attorneys).

*Mr. John P. Goceljak,* Assistant Prosecutor, argued the cause for respondent (*Mr. Harry Smith,* Assistant Prosecutor, on the brief; *Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney).

PER CURIAM. Defendant Fuchs was convicted of two charges of false swearing. The Appellate Division affirmed in an unreported opinion and we granted certification. 58 *N. J.* 598 (1971).

The charges arose out of the murder of one Judy Kavanaugh. Her automobile was found burning in the early morning of February 24, 1966, and her body was found about two weeks later. Harold Matzner, whose company employed both the deceased's husband and the defendant Fuchs, was indicted for her murder.

On November 16, 1966, some nine months after the homicide and before Matzner was indicted, Fuchs was summoned before the grand jury to testify as to Matzner's whereabouts at the time Mrs. Kavanaugh disappeared. In that connection Fuchs submitted to the prosecutor a lengthy statement prepared with the aid of his attorney, and he testified before the grand jury in harmony with that statement. On July 14, 1967 Fuchs testified at Matzner's bail hearing. The convictions here involved stemmed from the testimony Fuchs gave on those appearances. The testimony related to Matzner's alibi, that after participating in a meeting in Fair Lawn, New Jersey, on the evening of February 23, 1966 (Mrs.

Kavanaugh's car was found in flames in the early morning of February 24), Matzner and Fuchs left for Chicago to attend a business convention.

The first count alleged that Fuchs testified before the grand jury that he and Matzner left for Chicago on the evening of February 23 by a flight out of Idlewild Airport, New York, whereas he testified at the bail hearing that the flight was out of Newark Airport. We note that in connection with the grand jury testimony, Fuchs said his secretary gathered the data for him, and that on that basis he said that after the meeting in Fair Lawn "we traveled to, I believe to Idlewild, to take the last flight out to Chicago, and I believe the airline was American." He thought the flight left Idlewild at 10:00 P.M. On December 6, 1966 Fuchs appeared at the prosecutor's office and corrected that statement, saying they "arrived at Newark Airport in time for the 9:50 P.M. flight to Chicago." He testified to that effect at the bail hearing the following July. There is no question that Fuchs did buy two tickets for the 9:50 P.M. flight on American out of Newark. The first count charged that falsity inhered in one or the other statement as to the airport from which that flight took off. Fuchs attributed the discrepancy to his secretary's error which she discovered and which led to his corrective statement to the prosecutor on December 6, 1966 mentioned above.

The other count upon which Fuchs was convicted charged that he testified at the bail hearing that Matzner registered at the Chicago hotel for both of them whereas in fact Fuchs signed his own registration card. The testimony of Fuchs in this regard had been the same before the grand jury.

The false swearing statute, *N. J. S. A.* 2A:131–4, provides that anyone "who willfully swears falsely in any judicial proceeding" is guilty of false swearing. *N. J. S. A.* 2A:131–5 provides that if contrary statements are made under oath it shall be sufficient to allege in the alternative that one or the other is false; that proof of both statements is *prima facie* evidence that one or the other is false; and

that "if the jury are satisfied from all the evidence beyond a reasonable doubt that one or the other is false and that such false statement was willful," it shall be sufficient for a conviction. *N. J. S. A.* 2A:131-6 provides that it shall not be necessary to prove the matter sworn to was "material," and *N. J. S. A.* 2A:131-7 provides that " 'willful' shall * * * be understood to mean intentional and knowing the same to be false."

▮ ▮ The evidence does not sustain the convictions. The State must prove more than falsity. Willfulness, as defined in *N. J. S. A.* 2A:131-7, must be found, *i. e.,* that the defendant intentionally testified to something he knew to be false. Although the statute does not require proof of materiality, and motive as such is not an ingredient of the crime, nonetheless there must be some basis for an inference that a witness intentionally swore to something false while conscious of its falsity. *Cf. State v. Borrell,* 18 *N. J.* 16, 24 (1955). The Legislature intended to reach a witness who gives false testimony with a sense of wrongdoing. It would serve no public end, and indeed would disserve the judicial process, if every witness ran the risk that every misstatement could be found without more to have been made intentionally with an awareness of falsity.

Here the fact of falsity is clear, but we see no basis for an inference that Fuchs knew his testimony was false when he gave it. The record does not suggest that a purpose would be served by either misstatement, and absent some purpose, there is no reason to infer those misstatements were consciously false merely because they were untrue.

In his summation, the prosecutor tried to advance the claim of a conscious falsity in two ways. First, he suggested that Fuchs was trying to hinder the homicide investigation which revolved about Matzner. But both errors, which related to matters of record with the airline in the one case and with the hotel in the other, could not have detoured the investigation in November 1966 or July 1967. Of course it is conceivable that Fuchs labored under a misap-

prehension that his false statements could have that impact, but there being no evidence that Fuchs intended the misstatements to have that role, it would be sheer speculation to attribute that purpose to him and then to conclude from that speculation that he knew his testimony was untrue.

 Alternatively, the prosecutor argued to the jury that the trip to Chicago was made to fabricate an alibi for Matzner, saying:

"If they were not setting up an alibi, would they ask for a receipt from the Turnpike? * * * Did Matzner leave on the same plane with him?"

and further:

"He said that Matzner had registered for him, when, in fact, he had registered for himself. In fact, we have no knowledge of when, in actuality, Matzner ever arrived there. The only knowledge we have is what this man, Fuchs, says."

and still further:

"And we ask you that if the State in this case has proved that Jerry Fuchs in lying under oath, did it with design and with purpose, in order to cover up Harold Matzner and those involved and implicated in this case, that you do not hesitate to do your duty."

In suggesting that Matzner did not make the trip, the State went far from the indictment and the evidence in the case. The indictment did not charge and the State did not prove that Fuchs lied in saying Matzner went to Chicago with him or in saying they stayed at the same hotel until they returned.[1] Nonetheless the State sought to persuade

---

[1] That the State should so contend in summation was the more remarkable because when Fuchs sought to prove that Matzner also registered at the hotel in Chicago at the same time he did, the State objected, successfully, on the ground that it was immaterial. In passing, we note our view that the proof Fuchs offered should have been received since it could bear upon the good faith of Fuchs' misstatement that Matzner registered for both of them.

the jury to find a motive by interpolating an allegation that Matzner was instrumental in the Kavanaugh murder and that Fuchs was party to the creation of a false alibi for him. The prosecutor did not explain why the misstatements specified in the indictment would have been made designedly to support a planned alibi. It seems clear that although the argument was cast in terms of motive, the prosecutor in substance called for a conviction upon a claim of falsity nowhere alleged. The summation was plainly erroneous in thus straying from the indictment, and indeed without any evidence to support the departure.

The indictment was drawn, and had to be tried, on the hypothesis that Fuchs' testimony was false only in the respects specified in the indictment. When the record is examined in the light of the falsities charged in the indictment, there is nothing to warrant a finding that the defendant was conscious of falsity.

The judgments of the Appellate Division and of the trial court are reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.