125 N.J. Super. 200 (1973)
310 A.2d 97
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANGELO'S MOTOR SALES INC., NKA UNIVERSAL IMPORTS LIMITED, INC., AND ANGELO PARMIGIANI, DEFENDANTS-APPELLANTS, AND GREGORY RUE, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1973.
Decided October 1, 1973.
*202 Before Judges HALPERN, MATTHEWS and BISCHOFF.
Mr. Alfred O. Powell argued the cause for appellants (Mr. James Logan, Jr., attorney; Mr. Alfred O. Powell, of counsel and on the brief).
Mr. Carl W. Swanson, Jr., Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Carl W. Swanson, Jr., Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendants Angelo's Motor Sales Inc., now known as Universal Imports Limited, Inc. (corporation), and Angelo Parmigiani, the president and principal stockholder of the corporation (Parmigiani), appeal judgments of conviction after a jury trial for offenses hereinafter mentioned. A codefendant, Gregory Rue, has not appealed judgment of conviction entered against him.
The record discloses that the jury could have found that during the month of August 1969 William E. Mullins Jr. visited the premises of the corporation to purchase a new car and spoke with Gregory Rue, a salesman employed by the corporate defendant. During the discussion with Rue, Mullins came to realize that a new car would be too expensive. Rue then showed him a 1969 Austin Healey Sprite. Rue represented that the Sprite was a new "demonstrator" and, therefore, was priced lower than an entirely new car. An order to purchase the Sprite was signed by Mullins on August 13, 1969 and title was transferred from the corporation to him on August 22, 1969.
*203 After the purchase of the car, certain problems arose with respect to it. The father of the purchaser went to the premises of the corporation and asked for the warranty book. When he eventually received the warranty book, he noted that it indicated that one Ronald A. Boyd was the original purchaser of the Sprite. The father returned to the corporate premises and demanded an explanation. He was told on two occasions by Rue and Parmigiani that Boyd was a salesman employed by the corporate defendant and that the title to the Sprite had been placed in Boyd's name for corporate reasons. Further investigation by Mullins revealed that the car was not in fact a new demonstrator but rather a used car, having been previously sold to and repossessed from Boyd. Negotiations to resolve the dispute could not be resolved and a civil action was instituted by Mullins against Angelo's Motor Sales Inc. and the salesman Gregory Rue.
After the institution of the action interrogatories were propounded by Mullins' attorney to the corporate defendant. Answers to the interrogatories were prepared by the attorney for defendants in the civil action, and were signed by Parmigiani as president of the corporation. The interrogatories contained a certification in lieu of oath, as provided by R. 1:4-4(b). Two of the answers to those interrogatories are the subject of the false swearing counts of the indictment.
The civil action was settled. The Sprite was returned to the corporation and the entire purchase price was refunded to Mullins.
Parmigiani and Rue were summoned before a special Mercer County grand jury during November 1971. Both testified. On December 3, 1971 the grand jury returned a six-count indictment charging the corporation, Parmigiani and Rue with the following offenses: Count one charged the corporation, Parmigiani and Rue with conspiracy to defraud Mullins of money by means of false pretenses, by falsely pretending to Mullins that the Sprite was a new demonstrator *204 when in fact the automobile was used. N.J.S.A. 2A:111-1. Four overt acts committed in execution of the conspiracy were alleged. N.J.S.A. 2A:98-1 and 2. Count two charged the corporation, Parmigiani and Rue with obtaining money by false pretenses, N.J.S.A. 2A:111-1, and representing to Mullins that the automobile was a new demonstrator, when in fact it was used, having been previously sold to Boyd and subsequently repossessed. Count three charged Parmigiani with false swearing, N.J.S.A. 2A:131-4, in that he gave false answers to interrogatories material to a civil action pending in the Chancery Division between Mullins, as plaintiff, and the corporation and Rue, as defendants, concerning the sale of the car in question. The alleged false swearing was that Parmigiani answered that the mileage on the automobile at the time of its sale was "approximately 1,911 miles" when in fact the mileage was greatly in excess of that figure. Count four charged Parmigiani with false swearing, N.J.S.A. 2A:131-4, in that he answered in the interrogatories material to the same civil action that the automobile's mileage reading on its odometer had not been changed by the corporation prior to its sale to Mullins. Count five charged Rue with perjury before the grand jury on November 12, 1971. N.J.S.A. 2A:131-1. The claimed perjury was that Rue testified that he did not tell Mullins that the car was a new demonstrator and that he had told him that it was a repossessed car. Finally, count six charged Rue with perjury before the grand jury on November 5, 1971. N.J.S.A. 2A:131-1. The claimed perjury was that Rue denied under oath that he met with two representatives of the Better Business Bureau in December 1969.
After a motion to quash the indictment was denied the trial commenced on June 4, 1972. The factual dispute at the trial involved the questions of whether Rue represented to Mullins that the car was a new demonstrator, and whether the mileage had been turned back prior to the sale. Motions to dismiss all counts of the indictment were made prior to *205 jury selection, at the conclusion of the State's case, and at the conclusion of defendants' case. The motions were denied. A motion to sever the false swearing counts against Parmigiani from the other charges was denied. A similar motion with respect to Rue's perjury counts was also denied. At the conclusion of the State's case, a motion for acquittal on the perjury charge contained in count six against Rue was granted by the trial judge because of a variance between the grand jury transcript of his testimony and that contained in the indictment. A defense motion for a mistrial based on that dismissal was denied.
On July 6, 1972 the jury returned verdicts of guilty as to all defendants mentioned in each of counts one through five.
Motions for a new trial were denied and on January 5, 1973 Parmigiani was sentenced to a term of 60 days in the Mercer County Workhouse on count one. He received terms of 60 days in the workhouse on each of the remaining three counts, all to run concurrently with count one. Defendant corporation was fined $1,000 on each of the two counts to which it had been convicted. Rue was sentenced to a term of 30 days in the Mercer County Workhouse on count one, and two terms of 30 days each on counts two and five. The sentences on counts two and five to run concurrent to the sentence imposed under count one.

I
Defendant first urges that his convictions under counts three and four should be reversed, arguing that the convictions were improper because he signed a "certification in lieu of oath" at the foot of the answers to the interrogatories and was not administered a formal oath.
N.J.S.A. 2A:131-4 provides:
Any person who willfully swears falsely in any judicial proceeding or before any person authorized by any law of this state to administer an oath and acting within his authority, is guilty of false swearing and punishable as for a misdemeanor.
*206 The offense is distinguishable from the crime of perjury, a high misdemeanor, which is established under the provisions of N.J.S.A. 2A:131-1:
Any person who willfully and corruptly commits perjury * * *, on his oath, in any action, pleading, indictment, controversy, matter or cause depending or which may depend in a court of this state, * * * or in a deposition or examination taken or to be taken pursuant to the laws of this state or the rules of the supreme court of this state, before any public officer legally authorized to take the same, is guilty of a high misdemeanor.
N.J.S.A. 2A:131-4 is a legislative attempt to avoid the technical difficulties involved in a perjury prosecution and "to include certain commissions of falsehood under oath not within the classification of perjury." State v. Kowalczyk, 3 N.J. 51, 59 (1949). Conviction requires that the false swearing was willful and intentional. State v. Fuchs, 60 N.J. 564 (1972).
The State concedes that Parmigiani did not take an oath but argues that an oath is not a prerequisite to a swearing.
The Legislature has established two separate instances of conduct which are sufficient to constitute a violation of N.J.S.A. 2A:131-4: (1) swearing falsely in any judicial proceeding, and (2) swearing falsely before any person authorized by any law of this State to administer an oath and acting within his authority. We conclude that the certification of false answers to interrogatories propounded in a pending civil action satisfies the first statutory category. We reach this conclusion because our reading of the statute satisfies us that it is not the formal administration of an oath which the Legislature has deemed to be the crucial factor in the offense proscribed therein, but rather the verification of a false statement as true by any means.
In the past, interrogatories were required to be answered under an oath. A later amendment to the Rules of Court allowed the certification in lieu of oath as a convenience *207 for attorneys and the parties involved. R. 1:4-4(b). The change in rules was not intended to degrade the solemnity of the affirmation of the truth of the answers, nor was it intended to reduce the penalty for providing false answers to interrogatories. In our view, the adoption of the certification procedure merely constituted a change in ritual and not in substance. Certification is only another way of swearing or affirming. It is nothing in itself except as a perceptible manifestation of the intent to verify the statement certified.
Defendant urges that the false swearing statute must be strictly construed so as not to create a liability not clearly fixed by its words. We agree that penal statutes are to be strictly construed, State v. Vanderhave, 47 N.J. Super. 483 (App. Div. 1957), aff'd 27 N.J. 313 (1958), but such construction must not be so unduly narrow or artificial so as to disregard manifest legislative intention. State v. Rucker, 46 N.J. Super. 162, 167 (App. Div. 1957), certif. den. 25 N.J. 102 (1957). A reasonable interpretation of a statute should be made based upon the legislative purpose as revealed by the composite thrust of the whole statutory scheme. State v. Congdon, 76 N.J. Super. 493, 500 (App. Div. 1962); State v. Gattling, 95 N.J. Super. 103, 108 (App Div. 1967), certif. den. 50 N.J. 91 (1967).
The rule of strict construction does not prohibit a court from reading a statute in relation to the mischief and evil sought to be suppressed, State v. Meinken, 10 N.J. 348, 352 (1952), and while a penal statute cannot be extended by implication and intendment, its clear implication and intendment is not to be denied. State v. Brenner, 132 N.J.L. 607, 611 (E. & A. 1945). Construction which would have the effect of placing it in the power of a transgressor to defeat the object and purpose of the law by evasion is not to be favored. State v. Gratale, 26 N.J. Super. 581, 585 (App. Div. 1953).
In State v. Provenzano, 34 N.J. 318 (1961), our Supreme Court noted:
*208 The goal of the interpretative process is the intent of the Legislature. It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition. The rule that a penal statute should be strictly construed does not mean that a ridiculous result shall be reached because some ingenious path may be found to that end. Rather it means that a statute shall not be extended by tenuous interpretation beyond the fair meaning of its terms lest it be applied to persons or conduct beyond the contemplation of the Legislature. In part that rule also is designed to avoid surprise to the citizen who conscientiously seeks to stay within the law. * * * [at 322]
Under the facts presented here, it cannot be said that Parmigiani was not given notice that his conduct was criminal because the wording of the certification itself belies such a proposition. Nor can it be said that defendant Parmigiani was not apprised that the answers were to be considered as "under oath," since the introductory paragraph to the interrogatories specifically referred to a demand that the answers be given under oath.
We do not hold that the Legislature in passing the false swearing statute (N.J.S.A. 2A:131-4) specifically intended to encompass the false answering of interrogatories propounded in a judicial proceeding which are represented to be true by the signing of a certification in lieu of oath. We only need observe that the court rule permitting such certification was adopted after the passage of the statute. We do find, however, that the Legislature, in adopting N.J.S.A. 2A:131-4, intended to prevent and punish false statements formally sworn to by means of an oath as well as the solemn verification of false statements during the various stages of judicial proceedings. We find that the conduct of defendant Parmigiani falls clearly within the legislative intent.
[The remainder of the opinion discusses various points raised by defendants urging reversal, including claimed restrictions by the trial judge of cross-examination of State's witnesses, erroneous evidence rulings, misjoinder, improper tactics of the prosecutor, and erroneous instructions to the jury with respect to inconsistent verdicts. As to this last *209 claim, the court found that while technically erroneous, the challenged portion of the charge constituted harmless error when considered in the context of the charge as a whole and the proofs adduced by the State.]
The judgments of conviction are affirmed.