STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ROBERT SNOW, DEFENDANT-RESPONDENT.

Argued April 25, 1978—Decided August 9, 1978.

460

*Mr. Stephen R. Knox,* Special Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Leonard D. Ronco,* Acting Essex County Prosecutor, of counsel; *Mr. Knox,* on the brief).

*Mr. Donald J. Crecca* argued the cause for defendant-respondent (*Messrs. Sodowick, Richmond & Crecca,* attorneys).

The opinion of the court was delivered by

CLIFFORD, J. Defendant was indicted for possessing lottery slips, papers and memoranda pertaining to a lottery business in violation of *N. J. S. A.* 2A:121–3(b), and knowingly engaging as a messenger, clerk, copyist or other capacity in a lottery business in violation of *N. J. S. A.* 2A:121–3(a). The latter statute makes it a misdemeanor knowingly to act as

a messenger, clerk or copyist, or in any other capacity in or about an office or room in any building or *place* where lottery slips or copies of numbers or lists of drawings of a lottery, drawn or to be drawn anywhere within or without this State, are printed, kept or used in connection with the business of a lottery or lottery policy, so called * * *.

Defendant was convicted of both crimes. Although the Appellate Division affirmed his conviction for possessing lottery slips, papers and memoranda, it reversed his conviction for violating *N. J. S. A.* 2A:121–3(a), *State v. Snow,* 149 *N. J. Super.* 276 (1977). With respect to the "working for" offense, that court reasoned that the statute would authorize a conviction of a lottery messenger or worker only if it could be demonstrated that a particular building or place had been used in connection with the lottery business. 149 *N. J. Super.* at 281–282. We granted the

State's petition for certification, 75 *N. J.* 17 (1977), to review the reversal of the conviction for "working for a lottery."

The evidence at trial disclosed that on November 28, 1975 two East Orange police officers searching for a purse snatcher spotted defendant in the vicinity of 687 Central Avenue. Because he generally fit the description of the thief, defendant was questioned. He immediately asserted that he had just come from parking his automobile. To verify this the officers began to accompany defendant to the parking lot location. At this point one of the officers saw defendant drop two small tin foil packets on the street. Suspecting they might contain drugs, the officer retrieved the packets, opened them, and discovered two pieces of paper appearing to be lottery slips. Defendant was thereupon arrested, taken to police headquarters, and searched. In defendant's wallet the police found a third piece of paper likewise bearing certain notations suggesting it was a lottery slip. Through expert testimony the State established that the pieces of paper were indeed lottery slips; that defendant was a "writer," that is, one who writes or takes bets; and that he may also have been acting in the capacity of messenger at the time of his apprehension. Defendant did not testify.

Because the State failed to prove that defendant was working for a lottery in a specified place, defendant moved for judgment of acquittal. While recognizing that the Model Jury Charge (not approved by this Court) requires proof of a "betting place," *New Jersey State Bar Association, Model Jury Charges* § 2.400 at 121–23, the trial court nevertheless denied the motion and charged the jury that if it should "find the defendant was working for a lottery, it is not necessary that the State prove a particular place for conducting lottery operations." The court's reasoning, as revealed in its ruling on the motion, was that it does not comport with common sense to require proof of a gambling place where the evidence demonstrates that one is working for a lottery; that the statute in question should be given a broad

reading in keeping with the public policy of proscribing every phase of unlawful lottery operations; and in final analysis, as succinctly put by the trial court, "everybody's got to be someplace."

The Appellate Division reversed, being of the view that defendant's motion for acquittal on the "working for lottery" charge should have been granted. The court below perceived that "place" as used in the statute should not be understood to be ambulatory in the sense of encompassing a public sidewalk.

The statute clearly was intended to deal with a building or place used in connection with a lottery business, and not to embrace indiscriminately each and every location where one in possession of lottery slips happened to be, including a public sidewalk, and where, even though that person might be part of an overall operation, the proofs established only the fact of possession.
[149 *N. J. Super.* at 281–82.]

■■ We reverse. When a defendant is apprehended with lottery slips on his person of sufficient quantity or kind as to establish his worker status, a conviction of working for a lottery under *N. J. S. A.* 2A:121–3(a) may be sustained even though that apprehension takes place away from the lottery's unknown central location or away from any of the other numerous places or locations where workers are known to operate. The legislation in question does not carry with it the meaning that the "place" where lottery slips are "kept" must be fixed, permanent or stable, and a worker with a route cannot escape its reach.

This State has long honored, by legislative commitment, an " 'all-embracive' policy against all forms of gambling, except as specifically sanctioned," *State v. Hozer,* 19 *N. J.* 301, 308 (1955); *State v. Rucker,* 46 *N. J. Super.* 162, 168 (App. Div.), certif. den., 25 *N. J.* 102 (1957). One manifestation of that policy is the statute prohibiting "working for a lottery." The specific language of so much of that statute as is pertinent to the problem before us has

been retained in substantially unaltered form for over three-quarters of a century.[1] See *L.* 1898, ch. 235, § 58 at 810, in which the addition of the words "or place" after "in or about any office or room in any building" first appears, it being the only change from the form in which the same statutory language was set forth in L. 1895, ch. 293, § 1 at 593. While no legislative history is available, it is quite apparent that the effect of the addition was to expand beyond the interior appointments of a structure the locations as to which the statute became operable.

██ Given our court's consistently broad interpretation of the anti-gambling laws, we deem it reasonable to read *N. J. S. A.* 2A:121-3(a) to include within its ambit the place where this lottery worker was apprehended. It was there that, in the language of the statute, he engaged as a writer-messenger in a place where lottery slips were "kept" — that is, on his person. The indictment here specified that place as "in or about the area known as 687 Central Avenue, East Orange," thus enabling defendant to prepare his defense and to interpose any plea of *autrefois convict* or *autrefois acquit* in the event of any additional prosecution for the same offense. *Cf. State v. Morano,* 134 *N. J. L.* 295, 296 (E. & A. 1946). In light of this interpretation of the act the trial judge's ruling on the motion was correct and his instruction to the jury that "the State need not prove a particular place for conducting lottery operations" was not, in the context of this case, erroneous.

Aside from the language of the statute, it is apparent that the legislative design would be frustrated were the prosecution required in every "working for" prosecution

---

[1]The statute in question may be acknowledged to be neither a grammarian's delight nor a model of clarity. This may not have escaped the attention of the legislature, which has undertaken a wholesale revision of this chapter. See proposed New Jersey Code of Criminal Justice, *L.* 1978, ch. ——, § 37-2, approved in somewhat variant forms by the Senate (S. No. 738) and House of Assembly (A. No. 3282).

to demonstrate a specific place in the sense either of the central location or "nerve center" of the lottery operation, or again, any of the many outer branches thereof. The first category of worker mentioned in the statute is a messenger — one who carries the play to the "bank" or central office. A messenger's activities necessarily are conducted beyond the confines of the office, room, building or place where the other lottery workers — clerks, copyists, tabulators and the like — carry on their business. Certainly, it cannot be denied that when he leaves any of the many locations of the lottery business to make his rounds, the messenger is still working for the lottery; but, as the State points out, under the Appellate Division's reading of *N. J. S. A.* 2A:121-3(a), absent a surveillance connecting that messenger with a specific "central office" or "subsidiary office," he could be convicted of working only if he were in, leaving or entering that "office" and not if he were caught in transit. In other words a messenger would escape conviction if apprehended away from the shadow of the executive suite or lower echelon locations and busily engaged on his messenger rounds.

Much of what we have said in connection with "messenger" status applies with equal force to a writer, particularly to one in the position of this defendant who apparently was acting as his own messenger. The places in which bets are taken and illicit lottery operations conducted are limited only by the fevered imaginations of the participants. See *State v. Kuznitz,* 36 *N. J. Super.* 521, 530 (App. Div.), certif. den., 20 *N. J.* 136 (1955). Street corners, telephone booths, news stands and public parks are among the more common locations for the pursuit of writer-messenger business. Street wisdom suggests that many a writer walks around with his office "in his hat," and to that extent the "working for" offense is indeed ambulatory. To permit this defendant to elude conviction because the State offered no proof of either his home base or any intermediary point would be to countenance a construction of the statute "which would have the effect of placing it in the power of a trans-

gressor to defeat the object and purpose of the law by evasion", a result "not to be favored." *State v. Angelo's Motor Sales*, 125 N. J. Super. 200 (App. Div. 1973), aff'd *sub nom., State v. Parmigiani*, 65 N. J. 154 (1974).

■ Nor will our interpretation of the statute result in authorizing a conviction for "working for a lottery" where the proofs establish only mere possession. In any "working for a lottery" prosecution, the State must prove facts, beyond mere possession of lottery slips, demonstrating defendant's employment in a lottery. Indeed, in the instant case, the State conclusively showed that defendant was "working for a lottery" and was not merely a bettor in possession of lottery slips. At trial the State's expert emphasized certain significant features serving to mark this defendant as a "writer" rather than simply a bettor. Among these were the amount of play registered on the slips, the presence of a "writer's" code number, the indications of a running balance, and the presence of duplicate slips. These have generally been recognized as indicia of an accused's status of "writer" or messenger or other form of lottery employee. See Annot., *Construction and Application of State or Municipal Enactment Relating to Policy or Numbers Games,* 70 A. L. R. 3d 897 §§ 25–32 at 986–1009 (1976).

■ On the count charging defendant with working for a lottery in violation of N. J. S. A. 2A:121–3(a) the judgment of the Appellate Division is reversed and the trial court's judgment of conviction reinstated. The conviction for possession of lottery slips in violation of N. J. S. A. 2A:121–3(b) merges with the "working for" conviction because (as conceded by the State at oral argument) the very same lottery slips as supported the possessory offense formed the basis for the "working for" charges.

*For reversal and reinstatement*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—7.

*For affirmance*—None.