165 N.J. Super. 294 (1979)
398 A.2d 123
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE BELLUCCI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1978.
Decided January 18, 1979.
*295 Before Judges CONFORD and KING.
*296 Mr. Harold J. Cassidy argued the cause for appellant (Messrs. Krivit, Miller & Galdieri, attorneys).
Mr. Blair R. Zwillman, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Edwin H. Stern, Deputy Attorney General, on the brief).
The opinion of the court was delivered by CONFORD, P.J.A.D., Retired (temporarily assigned).
Defendant was indicted with Primas Johnson, Mildred Commandatore and Anthony Commandatore for various violations of the criminal statutes pertaining to the operation of a lottery. The Commandatores pleaded guilty immediately prior to the beginning of the trial of Bellucci and Johnson under circumstances material to the determination of this appeal, later to be recounted. Bellucci and Johnson were both convicted of working for a lottery and possession of lottery paraphernalia. Bellucci appeals on various grounds of which only two have merit. One is conflict of interest on the part of his trial counsel, and it will compel a reversal and new trial. We deal with the other grounds first.
On December 13, 1973 a raiding party of undercover detectives attached to the New Jersey State Police Gambling Unit converged on 16-18 Beacon Avenue in Jersey City. The premises were suspected of housing an illegal lottery operation and had been under surveillance for some time.
At approximately 4:30 P.M. the detectives observed Mildred Commandatore and Primas Johnson in the driveway of 18 Beacon Avenue. They were apprehended after police observed Johnson passing a paper bag to Commandatore. The bag contained lottery slips and $1280.50 in cash. Immediately thereafter, pursuant to a search warrant, the officers entered the kitchen of the premises at 18 Beacon Avenue. Defendant was observed seated at the kitchen table with slips of paper in front of him and a red pen in his hand. In close proximity to defendant on the table was an adding machine, a cellophane bag containing slips *297 of paper and scattered slips of paper with names and amounts of money written on them. Sixteen slips of paper containing numbers and initials were seized from the table at which defendant was sitting. Seized from the table was $450, and $456 was taken from defendant's person. The police placed defendant under arrest.
An expert witness for the State testified that much of the evidence seized in the raid on 18 Beacon Street was unlawful lottery paraphernalia. The witness opined that 18 Beacon Avenue was "being used as an office in the illegal lottery operation" and that defendant was "an employee of the illegal lottery operation."
At trial defendant disclaimed any connection with the lottery operation, although he was familiar with it, explaining he was present at the time of the raid only as a visitor to Mrs. Commandatore preliminary to an intended call on his friend, Mrs. Commandatore's brother, who was a patient at a nearby hospital. She had been sitting with him at the table, but had excused herself momentarily just before the police entered the room. There was copious evidence of Johnson's participation in the operation of the lottery along with the Commandatores.

I
Defendant urges that the prosecutor made improper and prejudicial remarks in his summation which deprived him of a fair trial. The comments here objected to concern (1) the prosecutor's reference to the "classic Hudson County defense" and (2) his observations respecting the trial tactics of counsel for codefendant Johnson.
In summation, the prosecutor stated:
The defense in this case when you look at it is really in two parts * * *  we can call the first part your basic and your classic Hudson County defense. It consists of this: * * * it consists of this as being brought out with regard to each of the Defendants, with regard to Mr. Bellucci that he lived in Hudson County his entire life *298 but for two days, * * *. Sympathy or belief that these people are from Hudson County; these are our buddies. He pointed out I'm from Hudson County, I live in Jersey City. We're all Hudson County people here. It's a certain image, a certain view that a lot of people do like to have about Hudson County and maybe you believe it. Maybe you believe the view that because these people are from Hudson County and the State Troopers are not, therefore, three people can go on violating the law. * * *
Later in his summation the prosecutor again referred to Hudson County. He stated:
I asked you as people who have taken an oath to make a determination on the facts, to have the intelligence to be able to see what's going on in this courtroom, to have the pride in your county not to believe that simply because people come from Hudson County that they can go around committing crimes and that is an image you want and to have the self respect for yourselves and for the oath you took to make a proper determination on the facts of whether a crime was actually committed.
Counsel for the defendant objected to these comments at side bar and demanded either a mistrial or a curative instruction. The court denied defendant's motion for mistrial but indicated that it would "take care of the Hudson County crack." Although the court said nothing to the jury in reference to these allusions beyond remarking "there's only two people on trial here and not Hudson County," we do not regard the prosecutor's remarks, although inappropriate, as warranting reversal. In effect, he was saying nothing more than that the jury should not acquit defendants merely because they and the jurors were fellow citizens of Hudson County. Cf. State v. Kenny, 128 N.J. Super. 94 (App. Div. 1974), aff'd 68 N.J. 17 (1975).
Complaint is also registered to the prosecutor's references to the "theatrical" defense of the codefendant Johnson by his counsel Mr. McAlevy. Again, we find the comments not exemplary, but also not prejudicial, particularly since they did not concern this defendant.

*299 II
Defendant objects to interjections by the court and the prosecutor during his cross-examination of the State's investigating officer which he claims left the implication that defendant was involved in a similar offense on a subsequent occasion. The assertion is ill-founded. The interjections were appropriate, being prompted by defendant's examining the officer as to whether he had "ever in [his] life" seen defendant write or take a numbers bet, receive money, etc. The episode did not remotely warrant a mistrial, as requested by defendant.

III
During the cross-examination of a state trooper testifying for the State regarding the undercover surveillance of codefendant Johnson, the latter's counsel requested permission for all counsel and the witness to visit one of the surveillance sites in Jersey City in order to take photographs. The request was unopposed by the State and joined in by counsel for defendant. Absent an objection by the State, the court permitted this "novel" procedure and excused the jury for the weekend. Defendant now contends that the court's sanction of this procedure was plain error in that it distracted the jury from the central issue in the case, i.e., the guilt or innocence of defendant.
We discern no error whatsoever, plain or otherwise, especially since defendant's counsel joined in the request and must have thought the procedure would be helpful to defendant at the time.

IV
Prior to trial defendant moved pursuant to R. 3:15-2(b) for severence of his trial from that of his coindictees. It was contended that the surveillance evidence, which would be highly probative of the guilt of defendant's coindictees, *300 would prejudice his defense as he was not involved in the surveillance. The State countered with the fact that defendant was found at the time of the raid seated at the kitchen table surrounded by assorted lottery paraphernalia. It argued that in the interest of economy and efficiency these jointly indicted defendants should be tried together. The court agreed and held that the particular circumstances of this case did not warrant a severance. Defendant now contends that the denial of severance constituted reversible error.
It is well settled that the grant or denial of a motion for severance is entrusted to the sound discretion of the trial court. R. 3:15-2; State v. Manney, 26 N.J. 362, 368 (1958); State v. Whipple, 156 N.J. Super. 46, 51 (App. Div. 1978). Denial of such a motion will not result in a reversal unless there is a showing of prejudice or a mistaken exercise of the trial court's discretion. State v. Morales, 138 N.J. Super. 225, 229 (App. Div. 1975); State v. Moriarty, 133 N.J. Super. 563, 569 (App. Div. 1975), certif. den. 68 N.J. 172 (1975). Here the substantive offenses charged against the codefendants all arose out of the same criminal transaction and the initial joinder was proper. State v. Tapia, 113 N.J. Super. 322, 328 (App. Div. 1971); State v. Kropke, 123 N.J. Super. 413, 418 (Law Div. 1973). The issue therefore is whether defendant was prejudiced by the joinder.
It has been recognized that where a significant portion of evidence to be adduced at a joint trial is admissible only as to one defendant, the probability of harm to the other may be so great that the trial judge should, as a matter of fair practice, exercise his discretion in favor of a severance. State v. Hall, 55 N.J. Super. 441, 451 (App. Div. 1959). In the present case there was considerable testimony concerning the undercover surveillance conducted by the State Police which had no probative weight as to defendant's guilt, thus raising the possibility of the jurors inferring defendant's guilt by association. However, this is a hazard inhering in all joint trials and is therefore not in itself sufficient to justify a severance, *301 provided that by proper instructions to the jury the separate status of the codefendants can be maintained. State v. Freeman, 64 N.J. 66, 68 (1973). Here the trial court repeatedly instructed the jurors to consider the evidence as to defendant separately in passing upon guilt. There is no reason to believe the jury did not comply with these instructions. Moreover, the potential harm to defendant was substantially reduced by the elimination of the Commandatores as defendants at trial by virtue of their pleas of guilty. See State v. Mayberry, 52 N.J. 413, 421-423 (1968), cert. den. sub nom. Mayberry v. New Jersey, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969).
We find no basis to conclude that the denial of the motion to sever was reversible error.

V
Defendant now asserts, for the first time, that his conviction of possession of lottery memoranda (count three) merged with the conviction of working for an illegal lottery (count two), and that it was error for the trial judge to sentence defendant separately on both convictions. He asks this court to vacate the judgment of conviction and sentence on count three. We agree.
In State v. Snow, 77 N.J. 459, 466 (1978), it was held that when "the very same lottery slips as [support]" a charge of possession of lottery slips "[form] the basis" for a charge of working for a lottery, a conviction of the former is to be merged into a conviction of the latter. We regard the principle of the Snow decision as applicable here. When apprehended, defendant was found in constructive possession of lottery slips and memoranda as well as other implements of an ordinary lottery enterprise. Conviction of working for a lottery obviously depended to a substantial degree upon the evidence of possession of the lottery papers. Consequently the lottery possession offense should be regarded as "an integral part" of the scheme of conducting, or "working for," *302 a lottery, and should merge into the latter offense. Cf. State v. Best, 70 N.J. 56, 63 (1976).
For purposes of any further prosecution of defendant after the reversal ordered hereinafter, defendant may be convicted of only one of the offenses (working for a lottery or possession of lottery slips) if the proofs at a new trial are as presented at this trial.

VI
Defendant contends that he was denied the effective assistance of counsel in that his trial attorney and the trial attorney for codefendant Johnson were partners in the practice of law. On our own motion, we have expanded this point to consider the effect of the circumstance that John P. Russell, Esq., defendant's attorney, was also the attorney for the coindictees Anthony and Mildred Commandatore immediately prior to their entering pleas of guilty and had advised them with respect to that step (although substituted counsel appeared for them at the taking of the pleas). Counsel have been afforded an opportunity to argue to the point. We conclude that all of these circumstances, taken together, amount to a case of conflict of interest on the part of Mr. Russell which requires the reversal of defendant's convictions.
At the trial herein the codefendant Johnson was represented by Dennis McAlevy, Esq., law partner of Mr. Russell. The fact of the partnership of the lawyers was mentioned before the jury in the course of colloquy over an objection to evidence being offered by the State. As indicated above, there was plenary evidence of Johnson's guilt. In defendant's case there was only his presence at the table in the kitchen on the isolated occasion of the raid. The jury might well have surmised, to defendant's detriment, that he would not have engaged a partner of the lawyer who was representing the apparently guilty codefendant Johnson if defendant were innocent of criminal association with the latter. While this *303 circumstance alone might not warrant a reversal, taken in combination with the other aspect of conflict of interest on the part of Mr. Russell, it produces an aggregate of potentiality of prejudice to defendant which commands reversal. State v. Land, 73 N.J. 24 (1977); State v. Boone, 154 N.J. Super. 36, 39 (App. Div. 1977); State v. Ebinger, 97 N.J. Super. 23 (App. Div. 1967). Although he was represented on the plea proceedings by James A. Galdieri, Esq., the latter referred to a conference preceding the plea proceedings he had had with Mr. Russell whom he identified "as Mr. Commandatore's attorney." It was made clear that Mr. Russell had reprepresented and advised Mr. Commandatore in reference to attempted plea negotiations and generally as to the advisability of pleading guilty. On February 1, 1977 Mildred Commandatore, the other coindictee, also pleaded guilty, being also then represented on the record by Mr. Galdieri. Again, it was brought out that this indictee had consulted with and been advised by Mr. Russell in reference to the matter of pleading guilty. Neither of the Commandatores was sentenced prior to the conclusion of the instant trial. Nor did either testify at the trial.
The potentiality for less than thoroughly faithful and undivided attention to defendant's interests at the trial on the part of Mr. Russell is obvious. Defendant's explanation of his presence at the Commandatore home on the incriminating occasion (which for present purposes must be assumed to have been truthful) could have been supported by calling Mrs. Commandatore, and his innocence of any connection with the lottery operation by calling both Commandatores, as witnesses. But Mr. Russell, as their prior attorney, had a conflicting interest in not calling them, as such testimony, favorable to this defendant, might have been deemed harmful to their interests in relation to their impending sentencing. Compare the closely analogous situation which impelled a reversal of a conviction in State v. Ebinger, supra (opinion by Justice, then Judge, Sullivan). Cf. In re Cipriano, 68 N.J. 398 (1975).
*304 There is nothing in this record to indicate, or any claim by the State, that defendant was advised before trial of the conflicting interests of himself and defendant Johnson and of himself and coindictees Commandatore, and, in consequence, of the conflict of interest on the part of Mr. Russell and its potential for prejudicing his defense. See State v. Land, supra, 73 N.J. at 34, 35; State v. Green, 129 N.J. Super. 157, 164 (App. Div. 1974).
The rule now clearly established in this State, and adumbrated as long ago as 1967 in the Ebinger case, supra, 97 N.J. Super. at 27, is that in the absence of waiver, if a potential conflict of interest exists, prejudice will be presumed resulting in a determination of violation of the State constitutional provision guaranteeing the assistance of counsel. N.J. Const. (1947), Art. I, par. 10. State v. Land, supra, 73 N.J. at 35. If there is to be a retrial in this case, either defendant must be advised by counsel and the trial court of the hazards of representation by Mr. Russell and consent thereto obtained or he must be represented by by different counsel. Ibid.
Reversed.