60 A.3d 501

FRANK ALFANO, JR., PLAINTIFF–APPELLANT, v. PATROLMAN PIERCE SCHAUD, LONGPORT POLICE DEPARTMENT, AND BOROUGH OF LONGPORT, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 7, 2013—Decided February 14, 2013.

Before Judges PARRILLO, SABATINO and MAVEN.

*Jacobs & Barbone, P.A.,* attorneys for appellant (*Louis M. Barbone* and *Yoo Nieh Ahn,* on the brief).

*Reynolds & Drake, P.C.,* attorneys for respondent, *Patrolman Pierce Schaud* (*Steven M. Horn,* on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

Plaintiff, Frank Alfano, Jr., appeals from the summary judgment dismissal of his two-count complaint against defendant Pierce Schaud, alleging violations of the New Jersey Civil Rights Act, *N.J.S.A.* 10:6–2, arising from a traffic stop.[1] We affirm.

The facts, viewed most favorably to plaintiff, *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), are as follows. Defendant is a patrolman for the Borough of Longport and had been for the four years preceding the incident in question. On May 15, 2009, he responded to a motorist's report of a traffic hazard caused by a parked car obstructing views of traffic at the

---

[1] Plaintiff also sued the Longport Police Department and the Borough of Longport, but is not appealing the dismissal of his complaint against these two entity defendants.

corner of 24th and Atlantic Avenues. Indisputably, plaintiff, a county employee who was delivering paper products to the municipal building at the time, was parked illegally outside the Longport library.

At 9:33 a.m., from his patrol vehicle, defendant radioed to police dispatch that he was responding to the passerby's complaint and requested the dispatcher to contact the library to locate the driver of the vehicle as it was causing a hazard. Thereafter, the librarian informed plaintiff that Longport police were waiting for him outside. Plaintiff then exited the building and met defendant, who advised him that he was parked illegally. Plaintiff responded that the two one-hour parking spots were being occupied by the Mayor and another official and if they did not park there all day, then plaintiff would have a parking space.

This much appears undisputed. However, the parties' versions of the events occurring thereafter significantly diverge. According to plaintiff, defendant became very upset, asked for plaintiff's driver's license, threatened to have him fired, and accused him of being a political enemy. The entire encounter lasted approximately forty minutes. When plaintiff asked to be ticketed so he could leave, defendant supposedly responded that they were being "watched" and that the officer had to make it appear as if he were giving plaintiff a hard time.

Defendant denies the confrontation was politically motivated and states that he asked for plaintiff's driving credentials only after plaintiff started cursing at him. According to defendant, the entire incident lasted ten to fifteen minutes and ended not with the issuance of a ticket, but rather a verbal warning and a suggestion that plaintiff park in the nearby police parking lot in the future. During the encounter, when plaintiff said he felt he was being "targeted" because of his position on certain municipal issues, defendant assured him that he was simply doing his job responding to a complaint of a traffic hazard by a passing motorist, and that while he was completely apolitical, he would not tolerate plaintiff's attitude.

Defendant's account of the duration of the traffic stop is supported by a real-time audio recording and transcript of the police dispatch radio traffic on the date and time in question, with verbal time markers, which demonstrate that the encounter lasted only nine minutes. As recounted by the motion judge in his decision granting summary judgment dismissal of plaintiff's complaint:

The recording indicates that [defendant] radioed to dispatch at 9:36 a.m. on May 15, 2009 regarding a "parking problem." At 9:38 a.m., a dispatcher called the Longport Library and spoke to a "Kathy," who asks a "Frank" if that is his vehicle, and "Kathy" tells the dispatcher that he was coming out to move the vehicle. At 9:39 a.m., [defendant] calls in to dispatch that he is going to be "out with that male from the County. Apparently he has a little bit of a problem with me doing my job." At 9:40 a.m., [defendant] calls in to dispatch with the license plate number of [plaintiff's] vehicle. At 9:45 a.m., [defendant] says, "I want to be clear. I corrected the attitude problem from that driver, and he's sent on his way, told him where to park next time." At 9:46 a.m., [defendant] calls in to dispatch to indicate that he will be "out of service for a couple minutes" as he was going to be dropping "Car 34 off at Margate Garage. They have to put a new window switch in this car."

As to the latter, Police Chief Pacentrilli certified that he authorized the order for the driver side power control switch for defendant's patrol vehicle; the installation of the power switch occurred within minutes; and defendant left the Margate Public Works garage at 10:06 a.m.

In granting summary judgment in favor of defendant, the motion judge reasoned:

Although Plaintiff indicates that the encounter lasted 40 minutes, in light of this overwhelming amount of proofs introduced by the Defendants, this bald faced assertion cannot be considered a "genuine or material" factual argument of any substance. This Court simply cannot rule that Plaintiff's assertion alone, that the encounter lasted 40 minutes, even in the light most favorable to Plaintiff, should stand against the audiotape with voice times embedded, Chief Pacentrilli's certification as to the events after 9:46 a.m., and no eyewitnesses to testify that the encounter was longer than ten minutes. Therefore, this Court has determined to grant summary judgment for Defendant at this time. The facts are so clearly in Defendant's favor, that a summary judgment is justified. *See Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 445 [916 *A.*2d 440] (2007).

On appeal, plaintiff challenges the grant of summary judgment relief, arguing that there are genuine issues of material fact concerning the circumstances and length of his detention by

defendants, on which his Civil Rights Act complaint is predicated. We disagree.

On appeal, we apply the same standard as the trial court in determining whether summary judgment is appropriate. *Prudential Property & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998); *Kopin v. Orange Products, Inc.,* 297 *N.J.Super.* 353, 366, 688 *A.*2d 130 (App.Div.), *certif. denied,* 149 *N.J.* 409, 694 *A.*2d 194 (1997). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c); *Brill, supra,* 142 *N.J.* at 528–29, 666 *A.*2d 146. The "essence of the inquiry" is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Brill, supra,* 142 *N.J.* at 536, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242 251–52, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)). The *Brill* Court explained the process:

> Of course, there is in this process a kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials. This process, however, is not the same kind of weighing that a factfinder (judge or jury) engages in when assessing the preponderance or credibility of evidence. On a motion for summary judgment the court must grant all the favorable inferences to the non-movant. But the ultimate factfinder may pick and choose inferences from the evidence to the extent that "a miscarriage of justice under the law" is not created.
>
> [142 *N.J.* at 536, 666 *A.*2d 146.]

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Shelcusky v. Garjulio,* 343 *N.J.Super.* 504, 510, 778 *A.*2d 1176 (App.Div.2001), *rev'd on other grounds,* 172 *N.J.* 185, 797 *A.*2d 138 (2002). "When the moving party has carried its burden ..., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 *U.S.* 574, 586–87, 106 *S.Ct.* 1348, 1356, 89 *L.Ed.*2d 538, 552 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc., supra,* 477 *U.S.* at 247–48, 106 *S.Ct.* at 2510, 91 *L.Ed.*2d at 211.

So for instance, although we are not to pass upon the credibility of the parties, "we are not required to accept, as competent evidence, a purely self-serving certification by plaintiff that directly contradicts his prior representations in an effort to create an issue of fact, which his previous testimony had eliminated." *Shelcusky, supra,* 343 *N.J.Super.* at 510, 778 *A.*2d 1176. More pertinent here, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 *U.S.* 372, 380, 127 *S.Ct.* 1769, 1776, 167 *L.Ed.*2d 686, 694 (2007). "Normally ... discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 *U.S.* 485, 512, 104 *S.Ct.* 1949, 1966, 80 *L.Ed.*2d 502, 524 (1984).

In *Scott, supra,* the defendant police officer terminated a high speed pursuit of the plaintiff driver's car by applying his push bumper to the rear of the vehicle, causing it to leave the road and crash. 550 *U.S.* at 375, 127 *S.Ct.* at 1773, 167 *L.Ed.*2d at 691. The plaintiff was rendered quadriplegic. *Ibid.* The plaintiff filed suit under 42 *U.S.C.* § 1983, alleging, inter alia, the use of excessive force resulting in an unreasonable seizure under the Fourth Amendment. *Id.* at 375–76, 127 *S.Ct.* at 1773, 167 *L.Ed.*2d at 691. The district court denied the defendant's summary judgment motion, which was based on qualified immunity and the United States Court of Appeals for the Eleventh Circuit affirmed on

interlocutory appeal, taking the plaintiff driver's view of the facts as given. *Harris v. Coweta County,* 433 *F.*3d 807 (11th Cir.2005), *rev'd,* 550 *U.S.* 372, 127 *S.Ct.* 1769, 167 *L.Ed.*2d 686 (2007).

The Supreme Court reversed, finding that a videotape capturing the events in question quite clearly contradicted the version of the story told by the driver and adopted by the district court and court of appeals. *Scott, supra,* 550 *U.S.* at 378–80, 127 *S.Ct.* at 1775–76, 167 *L.Ed.*2d at 692–93. In light of this blatant contradiction, the Court held that no reasonable jury could believe the plaintiff's discredited account, which therefore should not have been adopted for purposes of ruling on the summary judgment motion. *Id.* at 380–81, 127 *S.Ct.* at 1776, 167 *L.Ed.*2d at 694. Judging the matter then on that basis, the Court concluded that the defendant's attempt to terminate a dangerous high-speed car chase that threatened the lives of innocent bystanders did not violate the Fourth Amendment, even when it placed the fleeing motorist at risk of serious injury or death. *Ibid.* The car chase that the driver initiated posed a substantial and immediate risk of serious physical injury to others. The defendant's attempt to terminate the chase by forcing the driver off the road was reasonable, and the defendant was entitled to summary judgment. *Id.* at 386, 127 *S.Ct.* at 1779, 167 *L.Ed.*2d at 697.

We view the present matter similarly. Plaintiff's story of a forty-minute detention instigated by bad faith political retribution is utterly discredited by the audiotape, which is time-stamped and showed at most a nine-minute encounter that ended simply with a verbal warning and offer of another parking spot on future trips to the Longport library. Significantly, there is no indication, much less evidence, that the audiotape was doctored or altered in any way. Nor is there any credible proof that what it depicted differs from what actually happened.

Plaintiff's account is further contradicted not only by the indisputable fact that he was actually parked illegally, but as well by the certification of the Chief of Police, which corroborates the time sequences memorialized on the audiotape. As was the case in

*Scott, supra,* plaintiff's version of events is so clearly refuted by the record that no reasonable jury could have believed him, and therefore no "genuine" issue of fact existed.

We are therefore left to determine whether defendant was entitled to summary judgment as a matter of law. On this score, because the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons," it is subject to the "constitutional imperative that it not be 'unreasonable.'" *State v. Dickey,* 152 *N.J.* 468, 475, 706 *A.*2d 180 (1998) (internal quotation marks omitted). Of course, "the reasonableness of a detention is not limited to investigating the circumstances of the [initial] traffic stop." *Id.* at 479, 706 *A.*2d 180. "If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions." *Id.* at 479–80, 706 *A.*2d 180 (internal quotation marks omitted).

An "officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." *Id.* at 463, 706 *A.*2d 180 (internal quotation marks omitted). Under ordinary circumstances, "[w]hen the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by [the] police for additional questioning." *Ibid.* (internal quotation marks omitted). A police officer may not engage in "excessive questioning about matters wholly unrelated to the purpose of a routine traffic stop." *Ibid.* (internal quotation marks omitted).

Here, we are satisfied that defendant's nine-minute encounter with plaintiff was reasonably related in duration, scope and content to the reason for the brief, limited detention, which indisputably occurred because plaintiff's vehicle was parked illegally. As such, the so-called "detention" endured no longer and

was no greater in scope than reasonably necessary to effectuate its purpose. *See, e.g., Florida v. Royer,* 460 *U.S.* 491, 500, 103 *S.Ct.* 1319, 1325, 75 *L.Ed.*2d 229, 238 (1983); *State v. Baum,* 199 *N.J.* 407, 424–25, 972 *A.*2d 1127 (2009); *Dickey, supra,* 152 *N.J.* at 479–80, 706 *A.*2d 180; *State v. Chapman,* 332 *N.J.Super.* 452, 464–65, 753 *A.*2d 1179 (App.Div.2000); *State v. Hampton,* 333 *N.J.Super.* 19, 31, 754 *A.*2d 567 (App.Div.2000). Under the circumstances, the only sound conclusion is that the police action was objectively reasonable. Accordingly, there being no "genuine" issue of fact in dispute, defendant was entitled to summary judgment as a matter of law.

Affirmed.