**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3866-17T3

LEONARD BEST, Administrator
of the ESTATE OF LUIS
CANDELARIA,

     Plaintiff-Appellant,

v.

CITY OF NEWARK, NEWARK
POLICE CHIEF DARNELL HENRY,
NEWARK DIRECTOR OF PUBLIC
SAFETY ANTHONY AMBROSE,
and NEWARK POLICE SERGEANT
THOMAS RUANE,

     Defendants-Respondents.

_____

Argued April 1, 2019 – Decided July 11, 2019

Before Judges Messano, Fasciale and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9051-12.

M. Anthony Barsimanto argued the cause for appellant (The Maglione Firm PC, attorneys; M. Anthony Barsimanto, on the briefs).

Gary Scott Lipshutz, Assistant Corporation Counsel, argued the cause for respondents (Kenyatta K. Stewart, Corporation Counsel, attorney; Kenyatta K. Stewart and Gary Scott Lipshutz, on the brief).

PER CURIAM

On December 17, 2010, Newark Police Sergeant Thomas Ruane shot and seriously injured Luis Candelaria. It is undisputed that at the time Candelaria had a TEC-9 pistol concealed in the waistband of his pants. A grand jury indicted Candelaria, who subsequently pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d), and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3).

Candelaria provided the following factual basis under oath at his guilty plea allocution:

> Q. I direct your attention to December 17, 2010. On that day were you in the City of Newark?
>
> A. Yes.
>
> Q. Specifically, were you in . . . the [Seth Boyden] Complex?
>
> A. Yes.
>
> Q. [D]id you have in your possession a . . . handgun?
>
> A. Yes.

. . . .

Q. And you kn[e]w it was illegal to have not only a gun without a permit but also a defaced weapon . . . ?

A. Yes.

Q. And on that date were you approached by an officer?

A. Yes.

Q. Did he tell you to stop and identify himself?

A. Yes.

Q. And did you . . . at that point resist him arresting you?

A. Yes.

The judge sentenced Candelaria to a five-year term of imprisonment with a three-year period of parole ineligibility.

Candelaria filed a complaint asserting various common law causes of action against defendants City of Newark, its police director and police chief, and Ruane, as well as a claim that defendants violated the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Candelaria was deposed while the suit was pending but was subsequently murdered "in an incident" described only as "unrelated to the claims asserted."

A-3866-17T3

Plaintiff Leonard Best, administrator of Candelaria's estate, substituted into the litigation. During discovery, plaintiff served a subpoena duces tecum on the Northern Regional Medical Examiner (ME) for autopsy reports related to two civilian shooting deaths in 2003 and 2005 involving Ruane, and another subpoena on defendants, requesting the complete internal affairs (IA) investigation files related to those shootings and other complaints against Ruane alleging use of excessive force. Defendants successfully moved to quash both subpoenas. The judge found the information sought from the ME was "not relevant" in quashing the first subpoena, and, in quashing the second, held that by producing redacted versions of the IA files, defendants "satisfied [their] discovery obligations."

Defendants moved for summary judgment. After considering oral argument, the judge granted defendants' motion on several grounds. He determined that our decision in Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 295 (App. Div. 2010), precluded any claim that Ruane used excessive force because "a favorable outcome in the civil action would be inconsistent with the admissions [Candelaria] made by pleading guilty." Second, he concluded Ruane's conduct was objectively reasonable because the struggle took place in a "very dangerous place[,] . . . at night." Candelaria

4

admitted he was told "to stop" and "admit[ted] that he resisted arrest."  As a result, under the circumstances presented, the judge concluded Ruane was entitled to qualified immunity.  Finally, because there was no constitutional violation, the remaining municipal defendants could not be liable pursuant to Monell v. Department of Social Services of New York, 436 U.S. 658 (1978).  The judge entered the April 13, 2018 order granting summary judgment as to all defendants on all claims and dismissed plaintiff's complaint with prejudice.

Plaintiff now appeals that order, as well as the interlocutory orders quashing his discovery subpoenas.

I.

We limit our review of the grant of summary judgment to the record before the motion judge.  See Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000).  We address this issue first because it is dispositive of the appeal, and focus our attention, as plaintiff does, on the divergent descriptions of what occurred according to the two critical participants, Candelaria and Ruane.

In addition to the transcript of defendant's guilty plea, the motion judge had before him a transcript of Candelaria's deposition, in which he admitted obtaining the loaded handgun at a friend's house earlier in the evening of December 17, 2010.  Candelaria tucked the gun in the waistband of his pants

when he left, explaining he placed the handle to the right so he could remove the gun with "one fluid motion" if necessary. Candelaria admitted seeing Ruane, who was in full uniform, talking to someone in the housing complex as Candelaria walked toward his girlfriend's apartment. According to Candelaria, he anticipated Ruane would "probably . . . do a stop or a search or whatever" and thought he "could creep past and get inside the building."

Candelaria testified that Ruane grabbed him from behind as he walked past. Candelaria said his "reaction was to try to get [him] off of me." He unsuccessfully tried to throw Ruane "off [his] shoulder," after which Ruane spun him around and shot him. The entire incident took only seconds.

Contrary to his plea allocution, Candelaria testified that Ruane said nothing before firing the shot. Additionally, in written answers to interrogatories that were part of the motion record, Candelaria acknowledged that Ruane "felt a bulge in my pants," before spinning Candelaria around.

Ruane's deposition testimony, predictably, provided a different account. He was dispatched to assist another police unit in the housing complex, which he described as "so violent . . . with shootings and homicides." Ruane was speaking to an individual when Candelaria approached. This individual said to

6

Candelaria, "get the f*** out of here," which Ruane said was the person's attempt to "stall . . . and confuse" Ruane so Candelaria could "get away."

Ruane noticed a "skinny barrel in [Candelaria's] pant leg" as he approached, with his arm "guarding [that] side," and his other arm "swinging" freely. Ruane put his arms around Candelaria as he passed, and confirmed the object was a gun. Ruane yelled, "stop, police" and informed Candelaria he was "under arrest." Candelaria, however, tried to reach for the weapon, and the two struggled for control of it before falling to the ground. Ruane was on his knees, underneath Candelaria, when he fired a shot believing Candelaria was about to pull the weapon from his waist.

## II.

"An appellate court reviews a summary judgment decision by the same standard that governs the motion judge's determination." Caraballo v. City of Jersey City Police Dep't, 237 N.J. 255, 264 (2019) (citing RSI Bank v. Providence Mut. Fire. Ins. Co., 234 N.J. 459, 472 (2018)).

> Under that standard, summary judgment is appropriate when, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

A-3866-17T3

> [Ibid. (quoting RSI Bank, 234 N.J. at 472) (in turn quoting R. 4:46-2(c)).]

Our review is de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Therefore, the trial court's legal analysis is not entitled to any deference. The Palisades At Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff contends summary judgment was improper because "testimonial accounts" of Ruane's actions "varied," and therefore whether Ruane's conduct was reasonable or otherwise entitled to qualified immunity presented a genuine dispute that foreclosed summary judgment. He also argues that the judge misinterpreted our holding in Bustamante, and Candelaria's guilty plea did not bar the claims asserted in the complaint.

"The [CRA] was adopted in 2004 'for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection.'" Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting Owens v. Feigin, 194 N.J. 607, 611 (2008)). The CRA is analogous to its federal counterpart, 42 U.S.C. § 1983, Filgueras v. Newark Public Schools, 426 N.J. Super. 449, 468

(App. Div. 2012), and "[t]he interpretation given to parallel provisions of [§] 1983 may provide guidance in construing our [CRA]." Tumpson v. Farina, 218 N.J. 450, 474 (2014).

Here, the specific constitutional right at issue is the Fourth Amendment right to be free from excessive force, and we analyze such claims under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). "[T]he substantive question in excessive force cases 'is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Velazquez v. City of Camden, 447 N.J. Super. 224, 241 (App. Div. 2016) (quoting Graham, 490 U.S. at 397).

Whether the officer's conduct was objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly

9

evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97.

"The affirmative defense of qualified immunity protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown v. State, 230 N.J. 84, 97-98 (2017) (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015)).  The defense applies to suits brought under the CRA.  Id. at 98.

"This state's qualified immunity doctrine tracks the federal standard, shielding from liability all public officials except those who are 'plainly incompetent or those who knowingly violate the law.'" Ibid. (quoting Morillo, 222 N.J. at 118).  "To ascertain whether a governmental official . . . is entitled to qualified immunity requires inquiries into whether: (1) the facts, '[t]aken in the light most favorable to the party asserting the injury[] . . . show the officer's conduct violated a constitutional right'; and (2) that constitutional 'right was clearly established' at the time that defendant acted."  Ibid. (alterations in original) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear that a reasonable official understands that what he is doing violates that right.'" Radiation Data, Inc. v. N.J. Dep't of Envtl. Prot., 456 N.J. Super. 550, 559 (App. Div. 2018) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "[T]he clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (second alteration in original) (quoting Anderson, 483 U.S. at 639). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).

Generally, whether qualified immunity shields an officer's conduct is a question of law. Brown, 230 N.J. at 98. However,

> [a]n exception to that rule arises when the case involves disputed issues of fact. In such a circumstance, the case may be submitted to the jury to determine "the who-what-when-where-why type of historical fact issues," after which the trial judge may incorporate those

findings in determining whether qualified immunity applies.

[Id. at 99 (citing Schneider v. Simonini, 163 N.J. 336, 359 (2000)).]

As we understand the argument, plaintiff contends the judge was required to accept Candelaria's deposition version of events, i.e., that Ruane, without having felt the weapon in Candelaria's waist and without announcing his intention to arrest him, grabbed Candelaria and shot him when he resisted. As plaintiff contends in his brief, "the point-blank gunshot to the stomach was not justified."

However, this ignores prior statements Candelaria certified or made under oath and which were in the motion record. In his interrogatory answers, Candelaria admitted that Ruane's hand felt the "bulge in [his] pants" before the shot was fired. In his guilty plea allocution, Candelaria admitted under oath that Ruane approached him, ordered him to stop and announced he was under arrest before Candelaria resisted that arrest.

We need not consider whether the judge's application of Bustamante was correct under the circumstances of this case. The statements Candelaria made when he pled guilty are fully admissible in a civil trial. N.J.R.E. 803(c)(22). Accepting Candelaria's deposition version of events, he was not guilty of

12

resisting arrest, see, e.g., State v. Simms, 369 N.J. Super. 466, 470 (App. Div. 2004) (recognizing one of the elements of resisting arrest was the defendant's knowledge that the officer was effecting an arrest), however, the Court has recognized that a defendant cannot enter a plea of guilty in this state while maintaining his innocence. State v. Taccetta, 200 N.J. 183, 195-96 (2009).

Moreover, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Alfano v. Schaud, 429 N.J. Super. 469, 474 (App. Div. 2013) (citing Shelcusky v. Garjulio, 343 N.J. Super. 504, 510 (App. Div. 2001), rev'd on other grounds, 172 N.J. 185 (2002)). "[W]e are not required to accept, as competent evidence, a purely self-serving certification by plaintiff that directly contradicts his prior representations in an effort to create an issue of fact, which his previous testimony had eliminated." Shelcusky, 343 N.J. Super. at 510.

Moreover, even were we to assume Candelaria's deposition version of events were true, summary judgment was still appropriate because he failed to rebut defendants' assertion of qualified immunity. In an undisputedly violent, high-crime area, Candelaria admittedly secured a loaded handgun in his waistband and walked from his friend's house into a public area to go to his girlfriend's apartment. He positioned the gun to easily draw it and use it as

necessary. He admittedly saw Ruane in full uniform and suspected Ruane would stop and frisk him, so he tried to "creep past." Candelaria reacted to Ruane's first physical contact by attempting to throw the officer over his shoulder.

Under the two-prong qualified immunity analysis, the first step requires us to determine whether Ruane's actions were unconstitutional, i.e., whether they were objectively unreasonable under the totality of these circumstances. Brown, 230 N.J. at 98. While it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead[,] . . . [w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Garner, 471 U.S. at 11.

Plaintiff seems to imply that because Candelaria never threatened Ruane with the gun, the officer's actions were objectively unreasonable. However, this ignores well-recognized constitutional principles that permit both an investigatory stop and "a pat-down of a person's body" if, based on specific and articulable facts, the officer possesses "a reasonable suspicion of criminal activity." State v. Legette, 227 N.J. 460, 472-73 (2017).

As to the second prong of the qualified immunity analysis, the Supreme Court itself has recognized that "Graham [and] Garner . . . lay out excessive-

A-3866-17T3

force principles at only a general level." White, 137 S. Ct. at 552. In order to rebut the assertion of qualified immunity, plaintiff was required to show Ruane violated a "constitutional 'right [that] was clearly established' at the time that [Ruane] acted." Brown, 230 N.J. at 98. In order to stave off summary judgment, a plaintiff must "identify a case where an officer acting under similar circumstances as Officer [Ruane] was held to have violated the Fourth Amendment." White, 137 S. Ct. at 552.

Plaintiff urges us to accept Bennett ex rel. Estate of Bennett v. Murphy, 120 F. App'x 914 (3d Cir. 2005), as such a case, claiming it placed Ruane on notice that an officer is not permitted to use deadly force on a suspect simply because the suspect is armed. However, the facts in that case are substantially different. The court there concluded that the plaintiff, who was suicidal and surrounded by armed troopers, posed no threat to police or others when shot by a trooper who was more than eighty yards away and while the plaintiff held the gun to his own head. Id. at 916.

The Third Circuit also rejected the officer's claim as to the second prong of the qualified immunity doctrine, that is, that he did not violate some clearly established constitutional right. Id. at 917. The court rejected the District Court's reliance on factually inapposite "cases [that] involved armed suspects as

15

to whom, although they never pointed their weapons at police, the courts concluded that the police reasonably believed the suspects presented an immediate threat and that the use of deadly force was therefore justified." Ibid. Obviously, even if we were to credit the truth of Candelaria's deposition testimony, those are exactly the factual circumstances presented here. In short, the motion judge properly concluded that Ruane was entitled to qualified immunity and properly granted summary judgment.

It follows that the judge properly dismissed plaintiff's CRA claim asserting the municipal defendants were liable based upon an unlawful departmental custom of deliberate indifference in the IA process. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Moreover, it is "well-settled that if there is no [constitutional] violation in the first place, there can be no derivative municipal claim." Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 238 n.15 (3d. Cir. 2013).

We affirm the order granting defendants summary judgment.

16

Our review of a trial court's discovery order is limited, and we will defer to the rulings "absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). "A motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)).

Here, plaintiff contends the information in the ME files may have contradicted Ruane's version of those prior shootings and supported his claim that the municipal defendants' IA function was so inept as to demonstrate deliberately indifference to citizens' complaints of excessive force or to the proper discipline of Newark's officers. Plaintiff contends those portions of Ruane's IA files that were not supplied might demonstrate the actual investigations, which concluded Ruane's use of force was justified, were inadequate and demonstrative of the city's deliberate indifference.

We may agree that the judge took an overly restrictive view of the potential relevancy of the discovery sought by plaintiff. Nevertheless, in light of our previous discussion, we cannot conclude the lack of this material would have otherwise affected the outcome of defendants' summary judgment motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3866-17T3