**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3176-22

JOSE NOLASCO,

     Plaintiff-Respondent,

v.

THE ESTATE OF OTILIO
F. NOLASCO,

     Defendant-Appellant.

_____

Submitted September 19, 2024 – Decided October 24, 2024

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-012013-22.

Bastarrika, Soto, Gonzalez & Somohano, LLP, attorneys for appellant (Franklin G. Soto, on the brief).

PinilisHalpern, LLP, attorneys for respondent (William J. Pinilis, of counsel and on the brief).

PER CURIAM

In this quiet title action, defendant the Estate of Otilio F. Nolasco (the Estate), challenges a May 26, 2023 Chancery Division order denying reconsideration of the court's May 1, 2023 order, which granted plaintiff Jose Nolasco, summary judgment and declared him the fee simple owner of a residence in North Plainfield. Having considered the record against the applicable legal principles, we affirm.

We recite the following relevant facts from the motion record. In December 2016, plaintiff sought to purchase a home in North Plainfield. Due to his poor credit rating, he had difficulty obtaining financing. Plaintiff was "very close" with his now-deceased uncle, Otilio,[1] who agreed to apply for the financing so plaintiff could purchase the property.

According to plaintiff's certification filed in support of summary judgment, he opened a joint checking account with his uncle, made "all of the deposits" and "all of the mortgage payments that were due" from the account, and further attested his uncle never deposited any money into that account. Plaintiff further stated from the time of the December 2016 purchase to his death

---

[1] For purposes of clarity, where appropriate, we distinguish plaintiff and decedent by their first names as they share a common surname and intend no disrespect in doing so.

A-3176-22

in March 2021, his uncle never lived at the North Plainfield property and continuously maintained a separate residence.[2]

Following his uncle's death, plaintiff filed a complaint against his estate seeking to quiet title to the property and specifically sought a judgment declaring him the fee simple owner of the property. Defendant answered plaintiff's complaint, generally denied the allegations, and filed a two-count counterclaim seeking a declaratory judgment declaring the property an estate asset. Defendant claimed Otilio remained the title owner of the property under a duly recorded deed at the time of his death and asserted he "never made a valid gift of the [p]roperty" to plaintiff.

The court conducted a case management conference on February 13, 2023, and entered an order memorializing the fact that both parties had "waived depositions and agree[d] that discovery [wa]s concluded." The court further explained it "ha[d] been advised that plaintiff is drafting and will send defendant a frivolous lawsuit letter by [February 17, 2023] . . . ." It also ordered all dispositive motions to be filed by March 31, 2023.

---

[2] For reasons not explained by the parties, the relevant deed is not included in the record before us. Plaintiff acknowledges, however, that Otilio is listed "on the deed" for the property. We also note the referenced mortgage documents were not included in the motion record and are similarly not contained in the appellate record.

A-3176-22

Consistent with that order, on March 29, 2023, plaintiff filed a motion for summary judgment, supported by a statement of uncontested material facts and a certification of plaintiff. The Judiciary Electronic Document Submission (JEDS) system indicated electronic notice was sent to the email addresses of three individuals at defendant's counsel's firm. Defendant, however, failed to oppose the motion. Accordingly, on May 1, 2023, the court granted plaintiff's application, issued a conforming order that same day, and explained its reasoning in an oral decision.

Relying on plaintiff's statement of uncontested material facts, the court found defendant failed to provide any factual basis to contradict plaintiff's contention that Otilio "merely assisted [plaintiff] by obtaining financing which resulted in the need to have [Otilio] on the deed." The court also found plaintiff made all mortgage payments on the property and Otilio never resided there. The court accordingly declared plaintiff the "fee simple owner . . ." of the property and directed the defendant's executor "to execute all necessary documents to ensure that the deed for the [p]roperty is in the name of [plaintiff]."

Defendant subsequently became aware of the summary judgment decision and moved for reconsideration. In support, the executor of Otilio's estate, Daisy Rivera, submitted a certification claiming plaintiff failed to serve the Estate with

its summary judgment application. Rivera appended three documents to her certification: (1) a copy of the court's May 1, 2023 order; (2) a $3,000 check purportedly from Otilio allegedly paid towards the property's closing costs; and (3) a $18,661.29 check purportedly from Otilio and allegedly paid as a down payment on the property.

Rivera further attested, based on her "personal knowledge of the facts . . . , [t]he true nature of the arrangement" between the parties reflected that Otilio "purchased the [p]roperty, paid the down payment and closing costs, and allowed [plaintiff] to live there on the condition that he paid the mortgage as rent." Rivera also "dispute[d] the statements made by [plaintiff] in his certification . . . specifically that he was the one who made all of the mortgage payments and that [Otilio] did not deposit any money into the joint checking account."

At oral argument, defendant's counsel argued the check in the amount of $3,000 represented closing costs, and was paid from an account separate from the joint checking account Otilio and plaintiff shared. Defendant's counsel further contended the check for $18,661.29 represented a down payment towards the property and originated from Otilio's account rather than from the joint account he shared with plaintiff.

5

Plaintiff's counsel, however, clarified plaintiff gave Otilio the funds for the down payment and closing costs for the property and stated, "[i]t wasn't that [plaintiff] paid it back; it was his money from the beginning. . . . [W]hat they were trying to accomplish is . . . unclear to me. But it was all [plaintiff's] money." Significantly, defendant's counsel conceded that fact was "undisputed" and represented defendant had "no proof" to rebut plaintiff's counsel's statement. Finally, defendant's counsel acknowledged that plaintiff's summary judgment application was initially unopposed and stated he "wasn't disagreeing necessarily with the ruling, but just that [he] didn't have an opportunity to submit an opposition . . . ."

After considering the parties' written submissions and oral arguments, the court denied defendant's motion. The court first rejected defendant's contention that plaintiff's motion for summary judgment was improperly served. On this point, the court specifically found the notice of motion "went through JEDS to three people in [defense counsel's] office who were the people that were listed on JEDS for receipt of electronic notification[,]" which constituted "appropriate service."

The court also addressed, and rejected, defendant's substantive arguments. Specifically, the court found Rivera's statements "about what the arrangement

6

was . . . is hearsay," and "[s]he provide[d] no documentation whatsoever" in support of the statements made in her certification. The court also noted, defendant's counsel "conceded [defendant] cannot dispute [plaintiff's] position that . . . all the monies that went to the down payment and the mortgage payment[s] . . . came from [plaintiff]." Thus, the court found it irrelevant that Otilio might have paid the closing costs and down payment out of his personal account, reasoning: "if it's the plaintiff's money and it was funneled through [Otilio's] account, that doesn't change the fact that [Otilio] did not pay his own funds for the house, which was the basis for this lawsuit." Further, the court noted defendant's counsel did not dispute that plaintiff lived at the property and made all payments.

The court also considered the checks appended to Rivera's certification and found, "the first one is . . . a broker's check to a lawyer for a deposit. It does not show that it came from [Otilio,]" and while the second check was "for $18,000 and change[,]" it was otherwise illegible and "[t]here's no indication that . . . it has anything to do" with the property. This appeal followed.

We first address the applicable standards of review guiding our analysis and observe that defendant's notice of appeal referenced only the May 26, 2023

7

order denying reconsideration. Although we generally limit our review to the order identified in the notice of appeal, where:

> a motion for reconsideration [of a summary judgment order] . . . implicate[s] the substantive issues in the case and the basis for the motion judge's ruling on the summary judgment and reconsideration motions . . . [are] the same . . . an appeal solely from . . . the denial of reconsideration may be sufficient for . . . appellate review of the merits of the case, particularly where those issues are raised in the [case information statement (CIS)].

> [Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002).]

Here, although defendant's initial notice of appeal stated it appealed only from the court's May 26, 2023 order denying reconsideration, defendant indicated in its CIS that the Estate also appealed from the May 1, 2023 order granting summary judgment. We are satisfied the basis for the court's summary judgment decision and reconsideration motion are, in part, the same. Under the circumstances, we are convinced to render a proper determination on the court's order denying reconsideration we must necessarily also review the order granting plaintiff summary judgment.

We next turn to the appropriate standard of review for each order. We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59

8

(2015).  Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment."  Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (footnote omitted)).  When the moving party has carried its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Alfano v. Schaud, 429 N.J. Super. 469, 474 (App. Div. 2013) (alteration in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

A motion for reconsideration is meant to "seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion

9

record." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (citing Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Kornbleuth v. Westover, 241 N.J. 289, 301 (2020). "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2024). We review "questions of law and the legal consequences that flow from the established facts . . . de novo." Granata v. Broderick, 446 N.J. Super. 449, 467 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In its first point, defendant acknowledges plaintiff's motion was filed on eCourts or JEDS, but nevertheless states it is "also clear that [defendant] had not seen or perhaps never received notice of the filing." Defendant explains after the court granted plaintiff's unopposed motion on May 1, 2023, defendant "immediately filed for reconsideration" and that prompt action makes "clear that

a timely opposition would have been filed" had counsel been aware of the application.

Defendant also contends because plaintiff's counsel did not send a frivolous litigation letter, as discussed at the case management conference and referenced in the corresponding order, defendant "had no reason to initially expect a motion for [s]ummary [j]udgment might be filed with the [c]ourt prior to such a letter being sent." Defendant also reprises his argument that it was unaware of plaintiff's motion until it was granted, "[g]iven the accidental circumstances[,]" and, on reconsideration, raised a genuine issue of material fact with respect to Otilio providing funds for the down payment. We are unpersuaded by any of these arguments.

"'[T]he only constitutional requirements of service of process' is '"notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections."'" U.S. Bank Nat'l Ass'n v. Curcio, 444 N.J. Super. 94, 111 (App. Div. 2016) (alteration in original) (quoting O'Connor v. Altus, 67 N.J. 106 (1975)). "In all civil actions . . . orders, judgments, pleadings subsequent to the original complaint, written motions (not made ex parte), briefs, appendices, petitions and other papers . . . shall be served upon all attorneys of record in the

11

action and upon parties appearing pro se . . . ."  See R. 1:5-1.  Service referenced in Rule 1:5-1:

> shall be made by mailing a copy to the attorney at their office by ordinary mail, by email by an attorney to the email addresses listed on an approved electronic court system pursuant to Rule 1:32-2A(a), by handing it to the attorney, or by leaving it at the office with a person in the attorney's employ, or, if the office is closed or the attorney has no office, in the same manner as service is made upon a party.
>
> [R. 1:5-2.]

Notably, however, "Rule 1:5-2 was relaxed by order dated June 3, 2014[,] to permit service of process by electronic filing using an approved electronic filing system pursuant to R[ule] 1:32-2A(a) when that electronic filing system records that an automated notice of filing has been generated and transmitted." Pressler & Verniero, cmt. on R. 1:5-2 (2024).  Rule 1:32-2A(a) states, "[t]he Administrative Director of the Courts, with the approval of the Chief Justice, may develop and implement electronic court systems, including applications or systems for the purpose of electronic filing, electronic record keeping, or electronic indexing of data and documents."

We are unpersuaded the court erred in denying defendant's motion for reconsideration based on any "accidental circumstances" surrounding defendant's failure to oppose plaintiff's motion for summary judgment.

12

Defendant acknowledges plaintiff's motion was filed on JEDS and does not dispute notice was sent to email addresses associated with his firm. Indeed, the record indicates when plaintiff's motion was electronically filed, defendant's current counsel was the attorney of record, and notice of plaintiff's motion was sent to three email addresses associated with defendant's counsel's firm. As electronic filing constitutes effective service, see Pressler & Verniero, cmt. on R. 1:5-2, defendant's argument the notice was not "seen or perhaps never received" is unavailing. In any event, in deciding the motion for reconsideration, it is evident the court considered the merits of defendant's opposition but found defendant's belated proofs insufficient to warrant denial of plaintiff's supported application.

In its second point, defendant again contends it raised a genuine issue of material fact warranting the denial of plaintiff's summary judgment application. Specifically, defendant asserts Otilio paid over $18,000 "towards the initial purchase" of the property as well as $3,000 towards closing costs, both from his own account. Defendant concedes plaintiff resided at the property and made all mortgage payments that were due during the time he occupied the property, but claims "it is unclear if any proof was offered that the [plaintiff] paid the

13

[d]ecedent or [the Estate] back for the initial funds advanced towards purchasing the premises."[3]

N.J.S.A. 2A:62-1 address actions to quiet title and provides:

> Any person in the peaceable possession of lands in this state and claiming ownership thereof, may, when [their] title thereto, or any part thereof, is denied or disputed, or any other person claims or is claimed to own the same, or any part thereof or interest therein, or to hold a lien or encumbrance thereon, and when no action is pending to enforce or test the validity of such title, claim or encumbrance, maintain an action in the superior court to settle the title to such lands and to clear up all doubts and disputes concerning the same.

"One of the purposes of N.J.S.A. 2A:62-1 is to permit a landowner to sue for clarification of the validity or reach of [their] title in circumstances that otherwise preclude a forum for the resolution of such a dispute." Suser v. Wachovia Mortg., FSN, 433 N.J. Super. 317, 325 (App. Div. 2013). Additionally, in quiet title actions, the court may "finally settle and adjudge whether a defendant to the suit has an estate, interest or right in or lien or encumbrance upon the affected lands, or any part thereof, and what the same is and in or upon what part of the affected lands it exists." N.J.S.A. 2A:62-6.

---

[3] We note on this point, defendant's merits brief contains numerous material assertions without citations to the record contrary to Rule 2:6-2(a)(5).

We are unpersuaded by defendant's argument a factual question exists as to whether Otilio paid approximately $18,000 towards the property and $3,000 in closing costs and the "true nature" of the arrangement between Otilio and plaintiff and agree with the court's finding the contents of Rivera's certification were essentially unsupported "hearsay" without any "documentation whatsoever to support" them. We also conclude the certification failed to identify the basis for Rivera's knowledge.

Rule 1:4-4(b) allows certifications to be filed in lieu of more formal affidavits. State v. Parmigiani, 65 N.J. 154, 156 (1974); Pressler & Verniero, cmt. 2 on R. 1:4-4(b) (2024). The "allowance of certification in lieu of oath was admittedly intended as a convenience[,] but it in nowise reduced the solemnity of the verification or declaration of truth." Parmigiani, 65 N.J. at 157; see also State v. Angelo's Motor Sales, Inc., 125 N.J. Super. 200, 207 (App. Div. 1973) ("Certification is only another way of swearing or affirming").

Rule 1:6-6 requires statements in affidavits and certifications to be limited to the affiant's personal knowledge of facts upon which the affiant is competent to testify and admissible in evidence. See Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454 (App. Div. 1998) (acknowledging that "Rule 1:6-6 mandates that certifications be based on personal knowledge . . . ."). The

personal knowledge mandate under <u>Rule</u> 1:6-6 unequivocally excludes facts based on hearsay. <u>See</u> <u>Wang v. Allstate Ins. Co.</u>, 125 N.J. 2, 15-16 (1991). Further, we have previously stated "affidavits in which the affiant fails to identify specifically [their] position, or explain the source of [their] personal knowledge of the facts to which [they] attest[], or attempts to authenticate attached documents without explaining precisely what each is and how it came into the affiant's hands should be rejected." <u>New Century Fin. Servs., Inc. v. Oughla</u>, 437 N.J. Super. 299, 332 (App. Div. 2014); <u>see also</u> <u>Claypotch v. Heller, Inc.</u>, 360 N.J. Super. 472, 489 (App. Div. 2003) (explaining that certifications "based upon information provided to [the affiant]" do not satisfy the personal knowledge requirement of <u>Rule</u> 1:6-6).

Against these principles, we discern no error in the court's factual or legal conclusions that Rivera's statements constituted inadmissible hearsay. We also conclude those statements failed to satisfy the "personal knowledge" requirement of <u>Rule</u> 1:6-6, as she did not attest to any communications with Otilio or provide any basis for her statements or otherwise authenticate or lay a proper foundation for the documents generally attached to her certification. <u>See</u> <u>Claypotch</u>, 360 N.J. Super at 489; <u>Wells Fargo Bank v. Ford</u>, 418 N.J. Super. 592, 599-600 (App. Div. 2011) (finding a certification that plaintiff relied upon

in support of its motion for summary judgment was not properly authenticated because it did not: allege that the affiant had personal knowledge; give any indication how he obtained the alleged knowledge; and indicate the source of his knowledge).

With respect to payments Otilio purportedly made toward the property, the $18,661.29 check defendant included in the record is in part illegible, and we cannot discern it is what defendant claims it to be. Further, the court correctly found the $3,000 check does not show that it came from Otilio's account. Additionally, even if the checks did establish that Otilio paid the down payment and closing costs for the property from his personal account, defendant's counsel expressly represented at oral argument that it was "undisputed" those funds came from plaintiff. The court conscientiously probed counsel on this point and was entitled to rely on counsel's express representations.

In sum, we are satisfied on a de novo review the court's grant of summary judgment to plaintiff was appropriate in light of the record and representations made to the court, and the denial of reconsideration was not an abuse of discretion. Finally, we note our opinion is specifically limited to the parties before us and issues raised by them. We do not address the effect, if any, the

17

court's orders may have on any mortgagee. As noted, the record is devoid of any of the relevant mortgage documents, nor can we discern if there remains any outstanding debt on the property. Defendant's remaining arguments, to the extent we have not addressed them, lack merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3176-22